## STATE v. ROY EVERETT.

(Filed 2 November, 1927.)

**Criminal Law—Homicide—Evidence—Nonsuit—Death—Knife Wound—Cause and Effect—Blood Poisoning.**

Evidence tending only to show, upon a trial for wife murder, that the prisoner unintentionally in his sleep, as a result of a bad dream, inflicted upon his wife a wound too slight to have caused her death, except that from its neglect of treatment it may have been possible for blood poisoning to have set in therefrom that caused her death, is insufficient in law to sustain a conviction of manslaughter, and defendant's motion as of nonsuit should have been sustained, under C. S., 4643, in the absence of evidence, expert or otherwise, that death in the particular case, resulted from the wound's being infected by the poison; and where physicians have made an autopsy by exhuming the body of the wife after her burial, and the condition of her body was such as to make it in their opinion impossible to say that the particular wound resulted in death, this testimony alone is insufficient to sustain a verdict of manslaughter.

APPEAL by defendant from *Barnhill, J.,* at May Term, 1927, of CUMBERLAND. Reversed.

Indictment for murder. From judgment on the verdict that defendant is guilty of manslaughter, defendant appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Bullard & Stringfield for defendant.*

CONNOR, J. The deceased, Nina Everett, was the wife of defendant, Roy Everett. She died at their home in Cumberland County on Monday, 2 May, 1927. The State contended that her death was the result of a wound upon her head inflicted by defendant on Sunday night, 24 April, 1927, with a knife or some sharp instrument; that said wound became infected, because of neglect, and that this infection was taken into her circulatory system and carried thereby to her brain, causing cerebrospinal meningitis, which was the direct and immediate cause of her death.

There was evidence tending to show that on Monday, 25 April, 1927, a week before the death of deceased, defendant told a witness for the State, with whom he was at work in a field on his farm, that during the preceding night, while he was asleep, he had a dream that in his dream he saw a man coming toward him with a knife, threatening to kill him; that he said to the man, "I will cut you if you come on me";

that when he awaked he was in his wife's room and that he and she were on the floor; and that in response to a question addressed to her, she said to him, "The point of your knife was on the back of my head." This was the only evidence from which the jury could find that defendant inflicted a wound upon the head of deceased. There was evidence that when inquiry was made, both before and after her death, as to whether deceased had been stricken on the head, defendant said that he had never struck his wife. There was no evidence other than the testimony of this witness as to the statement made to him by defendant that he had struck his wife, at any time. There was an utter absence of evidence showing any motive or provocation for defendant to strike or cut his wife.

A witness for the State, the daughter of a tenant on defendant's farm, testified that deceased came to her home, about a fourth of a mile from deceased's home, with her baby in her arms, between 8:30 and 9 o'clock on Monday morning, 25 April, 1927; that while deceased was there, witness saw a cut on the left side of her head—a little cut above her ear. Deceased's hair was bobbed. This witness returned with deceased to her home, at her request, and spent the day there with her. She testified that she saw deceased at her home every day from then until her death. She took no further notice of the cut on deceased's head, which she referred to in her testimony as "a little scratch."

Another witness, who lived in defendant's home and worked for him on his farm, testified that on Monday, 25 April, 1927, he observed some blood on deceased's hair, on the left side of her head. These were the only witnesses who testified to having seen any wound on deceased's head prior to her death. There was evidence tending to show that during the week preceding her death deceased was engaged in her usual household duties, until Saturday, and that she visited neighbors during the week. On Wednesday she complained of a severe headache; she was sick during the remainder of the week, but was not confined to the house until Sunday. On Sunday defendant called a physician to see her. She was then unconscious, and not able to speak, except in monosyllables. She died about twenty-four hours after the physician's first visit. He testified that her condition was hopeless when he first saw her, and that he made no examination of her body and saw no wound on her head prior to her death. In the opinion of this physician, deceased's death was caused by cerebrospinal meningitis. This disease, the physician testified, is essentially and necessarily a disease of the brain and spine. The term is elastic and may be used to cover any disease of the brain or spinal cord of a non-specific nature. The disease may be caused by

infection in an open wound, in a diseased kidney, or by other infection, either external or internal.

The body of the deceased was exhumed about eighteen days after it was buried, and an autopsy held immediately thereafter. Physicians, admitted to be experts, who examined the body at the autopsy, testified that they found on the back of her head a scalp wound about one and a half inches in length; that in their opinion this wound was caused by a knife or some sharp instrument. They expressed no opinion as to when the wound was inflicted. The skull was not cracked. There was no injury to the skull or to the brain. These physicians said that they could not testify as to the character of the wound, because the tissues were in such condition that they could not make an examination of the wound. The skin on deceased's head was in such condition that the hair on her head was easily removed. There was no wound on the body of deceased except the scalp wound. There was no evidence from which the jury could find that this scalp wound was the direct and immediate cause of her death. The wound as described by the witnesses who saw it, before and after her death, was not a mortal wound, nor was it adequate and calculated, of itself, to cause death. The State did not so contend; its contention was that the wound became infected, because of neglect, and that this infection, taken up and carried to her brain, by her circulatory system, caused cerebrospinal meningitis, which was the direct and immediate cause of her death.

In this case, where it appears from all the evidence that the only wound on the body of deceased, prior to her death, was not mortal, and was not adequate and calculated, of itself, to produce death, although the jury may find from the evidence that it was inflicted by defendant, in the absence of evidence tending to show affirmatively that it was the result of an unlawful act of the defendant, it may be doubted whether the defendant can be held liable on an indictment for either murder or manslaughter, because after the infliction of the wound, it became infected because of neglect, with the result that the deceased died of cerebrospinal meningitis, caused by infection of the wound. It has been generally held that if a wound or other injury causes a disease, such as gangrene, empyema, erysipelas, pneumonia or the like, from which the wounded or injured person dies, he who inflicted the wound or other injury, is responsible for the death. This principle has been applied where the wound is mortal, or is adequate and calculated to produce death, and was inflicted as the result of an unlawful act. In the absence of authority to the contrary, it would not seem to be applicable, when the wound is neither mortal nor adequate and calculated to produce

death, and was inflicted by one who was not engaged at the time in doing an unlawful act. 29 C. J., 1080, and cases cited in the notes; *S. v. Hambright,* 111 N. C., 708; *S. v. Baker,* 46 N. C., 267; *People v. Kane,* 213 N. Y., 260, 107 N. E., 655, L. R. A., 1915F, 607, and cases cited in note. Certainly, in the absence of evidence from which the jury can find that the disease which caused the death, resulted from the wound, the person who inflicted the wound, but who did not cause the disease, cannot be held liable, in a criminal action for the death. See *S. v. Scates,* 50 N. C., 420, where it is said by *Battle, J.:* "If one man inflicts a mortal wound of which the victim is languishing, and then a second kills the deceased by an independent act, we cannot imagine how the first can be said to have killed him, without involving the absurdity of saying that the deceased was killed twice."

If the disease was the cause of the death of deceased, independently of the wound, although the jury may find that defendant inflicted the wound, as contended by the State, he cannot be held responsible for her death. The testimony of the expert witnesses is to the effect that the wound could not have caused the death of deceased, unless it be found as a fact that the disease which was the cause of her death, was the result of the wound, and that this fact could not be found unless the wound became infected prior to her death. The determinative question, therefore, on defendant's motion, made at the close of the evidence, under C. S., 4643, is whether or not there was evidence from which the jury could find that the wound became infected prior to the death of deceased.

A careful scrutiny of the testimony of the expert witnesses fails to disclose any evidence showing or tending to show that the wound, which neither of them saw prior to her death, was infected. Their conjectures cannot be accepted as evidence; they testified to no facts from which the jury could draw the inference that the wound was infected. There was no evidence tending to establish facts upon which expert witnesses could testify as to the essential fact involved in the State's contention that defendant by inflicting the wound upon the head of deceased caused her death. Defendant's motion that the action be dismissed should have been allowed, and judgment entered accordingly. The judgment that the defendant be confined in the State's prison for two years is

Reversed.