6 So.2d 450

### DUNCAN v. STATE.

#### 4 Div. 659.

Court of Appeals of Alabama.
Jan. 13, 1942.

Rehearing Denied Jan. 20, 1942.

W. R. Belcher and Arch B. Ferrell, both of Phenix City, for appellant.

Thos. S. Lawson, Atty. Gen., and L. L. Mooneyhan, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

Under an indictment charging murder in the second degree, appellant was convicted of manslaughter in the first degree.

The trial court refused to give two charges (among others) for defendant, (1) that the indictment includes a charge of manslaughter in the second degree, and (2) that it includes a charge of an assault and battery. Instructions to the jury on the degrees of homicide were limited by the trial court to those of murder in the second degree and manslaughter in the first degree.

The principal question for decision is the propriety of the trial court's action in refusing for defendant these two special charges, thereby precluding from the consideration of the jury the lesser offenses embraced in the indictment.

■ The charges asserted correct propositions of law and the jury could have convicted the defendant of either of these lesser offenses if (but only if) the evidence was sufficient to support such a charge. Code 1923, Section 8697, Code 1940, Title 15, § 323; Dennis v. State, 112 Ala. 64, 66, 20 So. 925; Compton v. State, 110 Ala. 24, 35, 20 So. 119; Kelly v. State, 235 Ala. 5, 176 So. 807; Keel v. State, 29 Ala.App. 191, 194 So. 416.

The facts in this case are unusual. The defendant and deceased, apparently, were friends. In a seemingly frivolous altercation, deceased struck defendant and defendant, in retaliation. threw a Coca Cola bottle, striking deceased upon the head. Though at the time the wound did not appear serious, the deceased succumbed four days later. An autopsy, performed by two experts from the State Toxicological Department, revealed that deceased was afflicted with a greatly diseased, abnormally enlarged and displaced heart, with exaggerated thrombosis—"the worst" they "had ever seen." Although, according to their opinion, death was accelerated by the blow struck by the defendant, the prognosis with such a diseased heart, under normal conditions, was bad, and the life expectancy of deceased was very uncertain "even if the lick had not been struck." One of these expert witnesses, Dr. Jones, testified that a person with a normal heart might have tolerated the shock, "but the normal expectancy of a man with this heart would not be expected to tolerate it. * * * The immediate cause of his death was from shock through weakness of his heart from this blow on the head; this just hastened his death. In other words, he might have been dying or in a dying condition because of that heart. Then the blow on the head hastened his death."

■ If death was due solely and exclusively to natural cause, i. e. heart failure, with the blow in no way contributing to or accelerating it, then, under the indictment, there was no homicide, and at most (if the blow were wrongful) defendant would only be guilty of some degree of assault. Beason v. State, 5 Ala. App. 103, 59 So. 712; Keel v. State, 29 Ala.App. 191, 194 So. 416; Code 1940, Title 15, § 323. If there was found in the evidence support for such a theory, "it matters not how slight the tendency of evidence may be towards establishing [such] fact * * * the court cannot exclude it from the jury," (Morris v. State, Ala.Sup., 39 So. 608, 611); under such circumstances the charge as to assault and battery should have been given.

■ On the contrary, by similar deduction, if the blow was a contributory cause of death and there was a tendency in the evidence to establish that it was perpetrated wrongfully, but without malice or intention to kill, then the defendant could have been convicted of manslaughter in the second degree. Code 1923, Section 4460, Code 1940, Tit. 14, § 320; Sawyer v. State, 20 Ala.App. 504, 103 So. 309. Under such circumstances his charge relating to this degree of homicide should have been given.

After a careful review of the evidence in the light of apposite authorities, we have concluded that it was for the jury—not the court—to say, from the facts presented, of what offense the defendant was guilty. Being so, the failure of the court to commit these issues of fact to the jury by limiting instructions to the law of murder in the second degree and manslaughter in the first degree and in refusing to give to the jury the correct statements of law embodied in the two requested charges as to the lesser offenses embraced in the indictment constituted prejudicial error.

We will discuss, first, the refusal of the charge dealing with manslaughter in the second degree.

■ It is axiomatic that while a specific intent to kill is not a necessary ingredient of manslaughter—although it may be present—yet to constitute voluntary manslaughter "the killing not only *may,* but *must,* be wilful or intentional." 29 Corpus Juris 1124, Section 116.

■ Likewise, "when death is produced by an intentional blow, but without malice or the intention to kill, if the blow was wrongful, this would be manslaughter in the second degree, commonly called 'involuntary manslaughter.'" Sawyer v. State, 20 Ala.App. 504, 103 So. 309; Jeffries v. State, 23 Ala.App. 401, 126 So.

177. In other words, even though the blow producing death might have been wrongful and intentionally struck, it would be no more than manslaughter in the second degree if perpetrated without malice or intention to kill. Under the unusual circumstances of the death of deceased, it certainly could not be affirmed as a matter of law (granting that it produced the death) that the blow was delivered with intention to kill. Under these circumstances, decision of the question, vel non, of the defendant's guilt of manslaughter in the second degree should have been submitted to the jury.

"The court is the judge of the law of the case, and in the exercise of this power determines the legality and admissibility of the evidence offered. *An indictment for murder in the statutory form includes manslaughter in the first and second degrees.* The plea of not guilty puts in issue these several degrees of the charge of homicide included in the indictment." (Emphasis supplied.) Dennis v. State, 112 Ala. 64, 66, 20 So. 925.

"It is much the safer rule to charge upon *all the degrees of homicide* included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree." (Our italics.) Pierson v. State, 99 Ala. 148, 153, 13 So. 550, 552. (This of course because of the difficulty which may arise to distinguish between the various degrees of homicide. Roberson v. State, 217 Ala. 696, 697, 699, 117 So. 412.)

"Our decisions are to the effect that every prisoner at the bar is entitled to have charges given, which without being misleading, correctly stated the law of his case, and are supported by any evidence, however weak, insufficient, or doubtful in credibility. Gibson v. State, 89 Ala. 121, 8 So. 98, 18 Am.St.Rep. 96. And in Morris v. State (Ala.Sup.), 39 So. 608, 611, it is said: 'It matters not how slight the tendency of evidence may be towards establishing any material fact involved, the court cannot exclude it from the jury. Its weight is for their determination.'" Burns v. State, 229 Ala. 68, 69, 155 So. 561, 562.

"When an indictment comprehends every degree of criminal homicide, and a conviction for murder is sought, the proper rule is to charge upon the characteristics and constituents of murder in each of its degrees, and upon manslaughter also, unless there is an absence of *all evidence* having a tendency to reduce the offense to manslaughter. Brown v. State, [109 Ala. 70], 20 So. 103; Pierson v. State, 99 Ala. [148], 153, 13 So. 550; De Arman v. State, 71 Ala. 351. That there was no such evidence introduced in this case we apprehend cannot be safely affirmed." (Our emphasis.) Compton v. State, 110 Ala. 24, 35, 20 So. 119, 122.

So, paraphrasing the last statement above, that there was no such evidence introduced (viz., that having a tendency to reduce the offense to manslaughter in the second degree) in this case we apprehend cannot be safely affirmed. It is our view that the charge relating to manslaughter in the second degree should have been given and that its refusal was reversible error.

We next deal with the refusal of the charge relating to assault and battery, i.e., that the offense of assault and battery was included in the charge against the defendant. Undoubtedly, this was a proper charge unless inapplicable to or not justified by the facts. Beason v. State, 5 Ala.App. 103, 59 So. 712; McWilliams v. State, 12 Ala.App. 92, 67 So. 735; Brewer v. State, 24 Ala.App. 410, 137 So. 454; Keel v. State, 29 Ala.App. 191, 194 So. 416; Code 1923, Section 8697, Code 1940, Title 15, § 323. Of course if the charge was merely an abstract statement of the law—as to the evidence inapplicable—no error was made in its refusal. Kelly v. State, 235 Ala. 5, 176 So. 807. Our observations above probably sufficiently illustrate our further conclusion that this charge, also, should have been given. But let us see further.

One of the stoutly disputed questions of fact was whether the defendant was the guilty agent who produced, or contributed to, the death of the deceased. If from the facts adduced the inference reasonably arose that the sole cause of death was heart failure, in no way superinduced or contributed to by the conduct of the defendant, then there was no homicide. The defendant under such circumstances might be guilty of assault and battery, and, if so, his requested charge should have been given.

The only evidence as to the cause of death was the testimony of the two ex-

pert witnesses from the State Toxicological Department. This certainly was not so conclusive as to take from the jury the prerogative of determining this important fact (i.e. cause of death) in view of the serious and aggravated heart ailment of deceased and the fact .that life for him under any circumstances was most uncertain.

"No rule of law is better settled than that 'opinions of medical experts as to the cause of death * * * either in answer to a hypothetical question or .based on personal observation and examination, do not invade the province of the jury, but go to them *to be weighed along with the other evidence in passing on the question of .causation;* or, stating the rule more broadly, when expert opinion as to causation is admissible, *the weight of the opinion is to be determined by the jury.'* (Italics supplied by us.) 20 Am.Jur. Evidence, 867, pp. 731, 732." Hardison v. State, ante, p. 40, 200 So. 635, 636, certiorari denied 240 Ala. 647, 200 So. 636.

Therefore we are inclined to the view that the cause of death was not conclusively proven, but that the jury should have had the right of determining this issue of fact. And had they concluded it to have been natural and not accelerated or conduced by defendant, a lesser verdict than homicide might have been warranted. Therefore the assault and battery charge was proper and its refusal constituted error. This principle is well exemplified by Mr. Justice Foster of our Supreme Court in Kelly v. State, 235 Ala. 5, 176 So. 807.

■ If, as viewed by the trial court, assault and battery was not, under the facts presented, properly included in the offense charged and subject to be considered by the jury, then Cnarge 14, refused to the defendant, should have been given. This for the obvious reason .that if, under the evidence, the defendant could not be guilty of assault and battery, then he could not be guilty of anything ("as charged", quoting the verbiage of Charge 14) if the death of deceased was caused *solely* from a diseased heart.

We think error prevailed in the refusal of the two charges dealing with the lesser offenses embraced in the indictment, and a reversal of the judgment of conviction is ordered.

Reversed and remanded.