STANLEY SEAGROVES *v.* STATE OF TENNESSEE.

(*Nashville,* December Term, 1954.)

Opinion filed August 2, 1955.

JEFF D. FULTS, of Tracy City, and FRANK DAVENPORT, of McMinnville, for appellant.

KNOX BIGHAM, Assistant Attorney General, for appellee.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The defendant, Stanley Seagroves, age 22, was convicted of voluntary manslaughter and his punishment fixed at a sentence of not more than three years in prison.

The deceased, Pascal Anderson, was 59 years of age at the time of his death. He was a country preacher and lived near a church building on Sweeton Hill, near Coalmont, Tennessee, at the time of his death. Sometime before his death Anderson had been appointed a Deputy Sheriff, and he had attended the services at this country church as an officer because of the fact that the congregation had been frequently disturbed in their worship.

It seems that on the night of the difficulty a disturbance broke out and the deceased, Anderson, went to the back of the church and talked to the defendant about the disturbance. There is proof that later the deceased went back to the defendant and had him leave the church.

There is conflict as just what took place out of the church. The State insisted that the defendant had a knife in his hand, and had words with the deceased, knocked him to the ground and administered several blows to his body. However, it does not appear that deceased was cut or stabbed during the difficulty.

On the other hand the defendant claims that Anderson drew a pistol on him on the outside of the church, and attempted to shoot him, but the pistol failed to fire three

times and then is when the defendant struck and knocked the deceased to the ground and administered the blows in question. The deceased was immediately taken to a clinic for treatment and it appears that in two or three days thereafter it was thought that he would recover, but he died six days after the encounter at the church.

The physician attending the deceased testified that he treated the deceased for gastroenteritis, and the physician testified when asked for the cause of death of the deceased, stated that he died from circulatory failure and from the *clinical findings,* it was evident that he had suffered from acute diarrhea and a stomach condition that he had at that time.

■ We cannot say, after a careful examination of the record, that the evidence preponderates against the guilt of the defendant and in favor of his innocence. The more serious question is as to the matter of failure on the part of the State to prove the corpus delicti. Nowhere does it appear from the physician's testimony that deceased died from the blows inflicted by the defendant.

In *Franklin* v. *State,* 180 Tenn. 41, 171 S. W. (2d) 281, it was held there need be no direct expert testimony as to cause of death, and death may be presumed to have been caused by apparent wounds, particularly when there is no suggestion in the record that the deceased died from any other cause than that relied on by the State.

Many other jurisdictions have held that a nonexpert may express an opinion as to whether certain wounds caused death, provided the witness describes the wounds and gives his reason for his conclusion. *Everett* v. *State,* 62 Ga. 65; *Edwards* v. *State,* 39 Fla. 753, 23 So. 537; *Lanier* v. *State,* 141 Ga. 17, 80 S. E. 5.

In the present case there seems to be no proof as to just how serious the wounds were upon the chest and the

other parts of the body of the deceased. We must gather from the physician's testimony that the blow struck left no unusual and fatal effects.

In our recent case of *Bean* v. *State,* 187 Tenn. 107, 213 S. W. (2d) 23, it was held that a wound from which death might ensue has been inflicted with murderous intent and has been followed by death, burden of proof is on accused to show that death did not result from such wound, but from some other cause.

In many cases of this nature there appears no expert testimony in the record, and where it appears that the blows struck or the wounds inflicted would likely produce death, we think the State has then carried its burden.

In Wharton's Criminal Evidence, Vol. 2, Sec. 872, it is stated:

"To sustain a conviction, proof of the criminal agency is as indispensable as the proof of death. The fact of death is not sufficient; it must affirmatively appear that the death was not accidental, that it was not due to natural causes, and that it was not due to the act of the deceased. Where it is shown by the evidence, on one side, that death may have been accidental, or it may have been the result of natural causes or due to suicide, and on the other side, that it was through criminal agency, a conviction cannot be sustained. Proof of death cannot rest in the disjunctive. It must affirmatively appear that death resulted from criminal agency."

In *State* v. *Rounds,* 104 Vt. 442, 160 A. 249, 254, the following language appears:

"In a homicide case, where the life or liberty of a citizen is at stake, and where the guilt of the accused must be established beyond a reasonable doubt, the causal connection between the death of the decedent

and the unlawful acts of the respondent cannot be supported on mere conjecture and speculation. In Wellman v. Wales, 98 Vt. 437, 440, 129 A. 317, 319, we said that: 'Evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise, or suspicion, is an insufficient foundation for a verdict.' "

■ Where it appears that it is equally probable that death resulted from one cause as from another, and the defendant is not responsible for one of the causes, then any determination of the cause of death cannot be speculative and conjectural, and the evidence will be held insufficient to support a verdict of guilty.

We do not have a case here where the wounds are so manifest that the court could reasonably conclude that these wounds produced the death of the deceased. Furthermore, while an expert witness testified here he gave as his opinion that the deceased did not die of the blows inflicted by the defendant.

In such a state of the record a conviction cannot be sustained. It results that the judgment of the lower court must be reversed and the case remanded for a new trial.