189 So.2d 595

Curtis S. COOK

v.

STATE.

8 Div. 11.

Court of Appeals of Alabama.

Aug. 16, 1966.

Smith & Moore, Guntersville, for appellant.

Richmond M. Flowers, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Curtis Cook was charged by indictment with murder in the second degree and convicted of manslaughter in the second degree. The jury fixed the punishment at twelve months at hard labor and a fine of $10.00. He was sentenced accordingly and after motion for new trial was overruled he appealed to this court.

The indictment charged that Cook "killed Charles Holland by beating him with his fists, and by causing him to strike his head on the paved sidewalk, * * *."

■ The indictment was not duplicitous, and was not subject to the ground of demurrer that two separate transactions were charged in the same count. Wesson v. State, 251 Ala. 33, 36 So.2d 361; Wall v. State, 16 Ala.App. 365, 77 So. 977.

The evidence for the state tends to show that Henry A. Parker, a policeman for the City of Guntersville, in response to a telephone call from defendant, went to the home of one John L. Perry, where he found the body of Charles Holland lying approximately nine feet from the back door. There was a porch about four feet wide and four feet long, with three steps on the east side and three steps on the west side. There was an iron railing on the south side, so that in going out of the door from the kitchen one could not walk straight ahead off the porch but would have to turn to the right or left. Going east from the bottom step on the east side of the stoop there was a small concrete walk running parallel with and adjoining the house. Deceased was lying face down approximately two feet from the sidewalk. He was wearing a pair of khaki pants and part of a left sleeve of a pajama top. Pieces of the pajamas were

lying above his head. There was quite a bit of blood on the left side of his head and face, and when he was rolled over there was blood on the right side of his face from the eye down and some blood had run from his nose and down his chin. He had blood on his stomach and on the back side of his body around the shoulder blades.

Richard Adams, Marshall County Coroner, testified he had had formal education in the subjects of bacteriology, pathology, physiology and anatomy preparatory to his work as an embalmer. That in such profession and in conjunction with his duties as Coroner he had examined and observed a great number of dead bodies where there was a skull fracture and cerebral hemorrhage. He stated, without objection, that from his experience of sixteen to eighteen years as an undertaker, based upon his examination of the body, it was his opinion the cause of Charles Holland's death was a "subarachnoid hematoma," which is a hemorrhaging of the brain where a vessel or vessels in the brain have ruptured and the covering of the brain that holds it all together is filled with blood. There was a skull fracture extending from the left temporal region downward and into the base of the skull. This was the region where the hemorrhage was found. The swelling was all on the opposite side of the head. His eye was badly bruised. His lips were bruised and cut on the inside and his nose was broken. There was a striated redness in the area of the skull fracture on the left side of the head and just behind the ear and a portion of the upper ear lobe. No blood was coming from that part of the scalp. A large amount of blood was coming from his nose. A blood sample was taken from the body and turned over to Mr. Pruitt, a State Toxicologist. It was estimated that the deceased was 5' 7" or 8" and weighed 135 or 140 pounds. He had on a pair of trousers with a pair of pajama pants under them, and the left sleeve of a pajama top.

The witness Parker was recalled to the stand and after a proper predicate was laid he testifed that a few minutes after he arrived at the Perry house defendant made a statement in the presence of Mr. Rollings, Chief McGown and the witness, in which he said that when he came there deceased was in the kitchen and witness asked him to leave so he could clean up the place; that he and Mr. Perry were going to Kentucky and were to have gone that afternoon; that he hit Holland two or three times and took him to the door and put him outside; that Mr. Perry was in the bedroom on the bed and no one was there except himself, deceased and Mr. Perry.

The defendant was taken to police headquarters where he made a statement to J. F. Gardner, an Investigator for the State of Alabama, and Deputy Sheriff Elmer Henderson. This statement was renduced to writing and signed by defendant. It was introduced in evidence and appears in the record. The statement sets forth that defendant had gone to the home of John L. Perry to get him to go to Kentucky. When nobody answered his knock he opened the door and went in the house. Perry was lying on the bed in one of the bedrooms and a fellow that he later learned was Charles Holland was lying on the kitchen floor. Standing astride of the man on the floor, defendant pulled or shook him on the shoulder to awaken him. He raised his head and asked, "Who in the Hell are you?" Defendant said, "This is Curt, what's the trouble." Deceased answered, "None of your God Damn business." The statement continues: "When he started getting up he reached over a chair that had a shirt on back of it and he had been laying on part of the shirt and got another chair that was setting up at the table. I presumed he was going to hit me with it and I hit him with my right fist and got a hold of him. When he dropped the chair I stopped hitting him. I hit him 4 or 5 times before he dropped the chair. But I did hit him in his face because it

was bleeding. * * * when he dropped the chair I put my right arm around his waist and caught his right wrist with my right hand and caught his left wrist with my left hand. * * * I kicked the screen door open with my foot and turned him loose with the exception of my right hand and when the door started to I turned him a loose. I don't know if he turned back to fight me or turned to come back in but he turned and got overbalanced and fell. When he hit the concrete I knew he was hurt. * * *"

Vann V. Pruitt, Jr., a Toxicologist for the State of Alabama, stated that a sample of blood identified as having been taken from deceased, revealed an ethyl alcohol content of 0.41 percent; that this represented an advanced stage of alcoholic intoxication, characterized by stupor, unconsciousness, almost complete loss of motor activity and very depressed reflexes; that there would be a very definite impairment of co-ordinative function; that a person with that amount of alcohol in his blood would be in a semi-comatose condition, typically referred to as a passed out individual.

Several witnesses testified as to defendant's good reputation.

■ Manslaughter in the second degree "is where it plainly appears that neither death nor great bodily harm was intended, but death is accidentally caused by some unlawful act, or an act strictly lawful in itself, but done in an unlawful manner and without due caution." Williams v. State, 83 Ala. 16, 3 So. 616. See also Williams v. State, 251 Ala. 397, 39 So.2d 37; Rutledge v. State, 36 Ala.App. 457, 60 So.2d 360; Jackson v. State, 38 Ala. App. 522, 93 So.2d 804.

Appellant's Counsel insists in brief that the state failed to establish that the blows inflicted on deceased by the accused caused the cerebral hemorrhage from which he died, or that these blows caused the deceased to strike his head on the paved sidewalk, therefore the trial court erred in overruling the defendant's motion to exclude the evidence.

■ The burden was on the State to prove a causal connection between the injuries inflicted by the defendant and the death of deceased, but such fact may be established by circumstances as well as by direct evidence. If there is any proof, direct or circumstantial, to establish the corpus delicti, the sufficiency of such proof is for the jury and not for the court. Gurley v. State, 36 Ala.App. 606, 61 So. 2d 137.

In Harvey v. State, 15 Ala.App. 311, 73 So. 200, an eyewitness testified that defendant struck deceased with a piece of green stovewood and that she immediately sank to the ground unconscious and died the following day. It was argued that deceased was a sickly, delicate woman, and that the state failed to show that the blow was the cause of her death. The Court said: "While it would appear that the blow on the head was the sole efficient cause of death, it need not have been; even if it was only a partial cause or contributing factor that accelerated her death, defendant would, in the eyes of the law, have been none the less guilty."

In his statement to the police defendant admitted hitting the deceased four or five times. It was for the jury to determine from the evidence whether these blows accelerated his death.

■ We are of opinion the evidence was sufficient to go to the jury and we find no error in the overruling of the motion to exclude the evidence.

■ Several instructions appear in the record under the heading "Defendant's Refused Charges." They are not endorsed in any manner. We are without authority to consider them. Skinner v. State, 36 Ala.App. 434, 60 So.2d 363.

**308**

The defendant did not testify in the case. In his closing argument to the jury the solicitor said: "Not a soul has told you anything but what that man was passed out."

We are of opinion this statement by the solicitor was not a comment on the defendant's failure to testify, but was merely a statement to the effect that the evidence for the State was uncontradicted or undenied and that the court did not err in overruling the defendant's motion for a new trial. Swain v. State, 275 Ala. 508, 156 So.2d 368.

The defendant introduced evidence of deceased's bad character for violence. In rebuttal the state offered evidence of his good reputation for peace and quiet. On the cross examination of one of these witnesses he was asked by defense counsel if deceased stayed "in Bryce's a whole lot." The witness answered, "I don't know, he went to the Veteran's Hospital, I think." On redirect examination the witness was asked, "Do you know whether or not he is a disabled veteran?" The defendant's objection to this question was sustained. Thereafter a physician was called as a witness for the State. He testified he had treated deceased for about ten years and estimated his weight at 85 pounds. He was then asked this question: "Do you know whether or not he was a disabled veteran?" The court sustained the defendant's objection to this question. Thereupon counsel moved for a mistrial. The court overruled the motion, but instructed the jury as follows:

"Gentlemen, you are to completely, absolutely and totally disregard the question that the Special Prosecutor asked, he was asking for absolutely illegal testimony. Completely remove it from your minds, dismiss it, don't consider it whatsoever in reaching your decision in this case."

We accord no merit to counsel's insistence that the court's instruction was not sufficient to eradicate the prejudicial effect of the solicitor's questions in this respect.

We find no reversible error in the record, and the judgment is due to be and hereby is affirmed.

Affirmed.