235 So.2d 906

**Andy WELCH, Jr.**

v.

**STATE.**

**I Div. 27.**

Court of Criminal Appeals of Alabama.

May 5, 1970.

Ralph Kennamer, Mobile, for appellant.

**658**

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal from a second degree murder conviction carrying a twelve year penitentiary sentence was originally assigned to our Presiding Judge.

**I**

September 7, 1968, appellant fired a shotgun at his wife. The shot hit the lower thigh of her right leg. The surgeon to whom she was sent gave her no drug to offset blood coagulation, according to the State's witness, Dr. Jack Dozier.

November 13, 1968 she died. A blood clot had formed in her left leg. Cause of death was the clot's lodging in her lung.

We quote, in part, from the State's examination of Dr. Dozier on redirect:

"Q And you said the inactivity was a direct result of the gunshot wound, didn't you?

"A Yes, sir.

"Q And the blood clot was the direct result of the gunshot wound and her death?

"A Probably associated with it.

"Q The blood clot was the direct cause of her death?

"A Yes, sir."

More facts may be found in the dissenting opinion of our Presiding Judge.

**II**

Causation in criminal law is not uniformly the same as in tort. For example, the contributory "negligence" of a victim in case of felony is not a bar to conviction though it may afford argument for a jury to mitigate.

The trial judge should have granted appellant's motion to exclude the State's evidence. The State failed to prove that the blood clot which came from the *left* leg was due to the wound in the *right* leg. Post hoc non propter hoc.

The physician's expression "probably associated with it" is too vague to support a murder verdict. No testimony was given as to how blood clots form and circulate. No autopsy was made.

In a death as distinguished from a "killing," the prosecution must prove an absence of natural causes. That is, the first step is to prove the victim died because he was killed.

In McAllister v. State, 17 Ala. 434, we find the court approving Hale's "causa causati," i. e. "cause of caused (or effect)" expression of answerability for wounds im-

mediately or mediately resulting in death.[1] Put simply, has the appellant shortened his wife's life by wounding her?

██ Except as a literary expression, "but for" is too imprecise for a rule of causation where proof beyond a reasonable doubt is axiomatic. Mankind might still be in Eden, but for Adam's biting an apple.

Accordingly, we do not think that cases such as Gurley v. State, 36 Ala.App. 606, 61 So.2d 137; Frazier v. State, 40 Ala.App. 67, 112 So.2d 212; or Cook v. State, 43 Ala. App. 304, 189 So.2d 595 control under the instant record.

In addition to jurisprudential discussions in Hall, General Principles of Criminal Law (2d ed.), Ch. VIII, Causation, pp. 247–295; Hart & Honore, Causation in the Law, 72 L.Q.R. 58–59, 260–281, 398–417; Glanville Williams, Causation in Homicide, Crim.Law Rev. [1957], 429–440, 510–521, we have also adverted to the more usual sources: 40 C.J.S. Homicide § 11 Cause of Death, § 312 d. Cause of Death and Criminal Agency; 40 Am.Jur.2d, Homicide, § 13, et seq.; and Anno. 31 A.L.R.2d 693, Anno. 100 A.L.R.2d 769.

██ Basically, we conceive that the instant record (beyond which we cannot go) shows a situation controlled by Duncan v. State, 30 Ala.App. 356, 6 So.2d 450.[2] Here, for aught that appears, we have an unconnected fortuitous blood clot as the sole cause of death.

In *Duncan*, supra, we find pertinently:

"If death was due solely and exclusively to natural cause, i. e. heart failure, with the blow in no way contributing to or accelerating it, then, under the indictment, there was no homicide, and at most (if the blow were wrongful) defendant would only be guilty of some degree of assault."

We have also adverted to cases from other jurisdictions. A number bear factual resemblance to that presented by the evidence here: Stevens v. United States (D.C. App.), 249 A.2d 514; Kilgore v. State (Ga.App.), 95 Ga.App. 462, 98 S.E.2d 72; State v. Everett (N.C.), 194 N.C. 442, 140 S.E. 22; State v. Bynum (Ohio App.), 69 Ohio App. 317, 43 N.E.2d 636; Commonwealth v. Radford (Pa.), 428 Pa. 279, 236 A.2d 802; Rucker v. State (Tenn.), 174 Tenn. 569, 129 S.W.2d 208; Seagroves v. State (Tenn.), 198 Tenn. 633, 281 S.W. 2d 644; Terry v. Commonwealth (Va.), 171 Va. 505, 198 S.E. 911; and State v. Lynn (Wash.), 73 Wash.2d 117, 436 P.2d 463.

We quote from

Stevens v. United States, 249 A.2d 514:

" * * * the causal connection must be proven beyond a reasonable doubt and not by mere conjecture and speculation."

Kilgore v. State, 95 Ga.App. 462, 98 S.E. 2d 72:

"J. L. Kilgore was indicted in the Superior Court of Carroll County for the murder of his wife, and was convicted of involuntary manslaughter. On the trial it appeared that the wife died on Wednesday, May 16, 1956. On the previous Friday the defendant had hit her on the top of her head with a stick about a foot long, knocking her almost but not entirely senseless. On Sunday he hit her in the face several times with his hand or fist. On Tuesday the defendant and his

---

1. Hale's words "mediate cause" we believe to be synonomous with *mesne* cause. Mesne, of course, implies that which is between and usually is connective.

2. To say that the motion to exclude was too broad because it ignored any lesser included assault would require us to rely on the discredited principle of waiving oneself into prison in the face of no evidence to support the verdict. See special concurrences of Foster and Bouldin, JJ. in Pugh v. State, 239 Ala. 329, 194 So. 810. Moreover, the appellant moved for a new trial, alleging several apt grounds to raise the discrepancy between the punishment and the evidence.

wife went fishing, and she fell into the water, and he hit her across the back with a fishpole. Later he was seen coming back to the house with her in a truck, at which time he struck her several times around the neck and shoulders. During this time she was a sick woman, subject to dizzy spells and hypertension, and frequently fell down. The defendant in his statement told how, on that same afternoon, his wife had attempted to go back to the house by herself, and had fallen and become mired in the lake mud for a period of time, and that he finally found her there. Tuesday evening she was taken to the hospital, where she died the next day. The autopsy revealed superficial injuries to the nose and cheek, and a bruised area on the top of the head extending down to the outside of the skull. The deceased was suffering from a brain tumor about two inches in diameter embedded in the right frontal lobe of the brain, as revealed by autopsy. No other injuries or abnormality were found.

\* \* \* \* \* \*

"It will be observed that this testimony is barren of any inference that the blow, which the woman received some 6 days before her death (or any other of the acts of maltreatment) did or would even be likely to accelerate the death of a person suffering with her disability. Although, in Long v. State, 60 Ga.App. 517, 4 S.E.2d 75, 78, a conviction was affirmed although the medical witnesses refused to give their opinion as to the cause of death, in that case there was no other cause of death suggested by evidence except the wound inflicted by the defendant, whereas here the witness testified that the tumor caused the death. Judge Guerry, dissenting in the Long case, had this to say: 'In spite of the testimony of experts who swear they could only speculate as to the cause of the death, may a jury say, or may this court say, "We know and are convinced beyond a reasonable doubt that the wound inflicted caused the death" ? \* \* \* Can it be said that the jury's common knowledge is so superior to that of the sworn expert witnesses that it knows absolutely while they, [the experts] the doctors, still "see through a glass darkly" ?' The evidence in this case is insufficient to show, even hypothetically, a causal relationship between the blow and the death, for which reason the conviction must be reversed."

State v. Bynum, 69 Ohio App. 317, 43 N.E.2d 636:

"There is no evidence in this record, medical or otherwise, that the death of James Charles on September 19, 1941, was caused, or probably caused, by the assault at the hands of the defendant on or about March 15, 1941. The only testimony on the subject, given by the only medical witness offered, was that of the county coroner who performed an autopsy upon the body the day following death, assisted by another doctor who was not a witness at the trial. The coroner, testifying from records furnished by the hospital and by the doctor who made laboratory tests of certain tissues from decedent's head, from X-rays taken at the hospital, and from the results of the autopsy, gave the official cause of death as 'a meningitis.' He testified that an old fracture of the skull was found, in connection with which an abscess had formed, and that if the assault of March 15th caused the fracture, which he did not know and could not say, that it 'might have been' the cause of death on September 19th; that it 'could have been' the cause of it; \* \* \*.

\* \* \* \* \* \*

"That the cause of death was meningitis, in the absence of any other testimony on the subject, we assume; but that the meningitis causing death was the result of any blow suffered on March 15th or thereabouts is not supported by any competent evidence in the record. What 'might have resulted' or 'could have resulted' or a 'possible result' is quite too uncertain to support a verdict of conviction in a criminal case."

Commonwealth v. Radford, 428 Pa. 279, 236 A.2d 802:

"The crux of the problem presented on appeal is whether the beating administered by defendant was the 'legal cause' of the thrombosis which set off a chain reaction eventually resulting in death.

"[1] The Commonwealth, in an effort to prove legal causation, produced one expert medical witness who had performed an autopsy on the body of the deceased. After a careful study and evaluation of the notes of testimony, we are drawn to the conclusion that at best his testimony indicates that defendant's assault on the deceased *probably* caused the death.

"[2] The Commonwealth is charged with the responsibility of proving every essential element of a crime beyond a reasonable doubt. Commonwealth v. Wucherer, 351 Pa. 305, 311, 41 A.2d 574 (1945). Causation being an essential element to the crime of murder, the failure of the Commonwealth to prove more than *probable* causation justified the lower court's grant of defendant's motion in arrest of judgment."

Rucker v. State, 174 Tenn. 569, 129 S.W. 2d 208:

"It is true, as held in Odeneal v. State, 128 Tenn. 60, 62, 157 S.W. 419, a case relied on by the State, that one who inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause. This rule can find no application in the instant case for the reason that the evidence fails to show that the death of deceased was a consequence, direct or through the operation of intermediate agencies, of the injuries received by deceased at the hands of defendant."

Seagroves v. State, 198 Tenn. 633, 281 S.W.2d 644:

"Where it appears that it is equally probable that death resulted from one cause as from another, and the defendant is not responsible for one of the causes, then any determination of the cause of death cannot be speculative and conjectural, and the evidence will be held insufficient to support a verdict of guilty."

Terry v. Commonwealth, 171 Va. 505, 198 S.E. 911:

" * * * the accused, while driving his car in an intoxicated condition, struck the rear end of another car so hard that it was forced across the intersection where it struck William Fox, a pedestrian. The blow broke Fox's left leg and rendered him temporarily unconscious. He was taken to the hospital that afternoon and examined carefully by Doctor R. F. Cline, who set the broken leg. The next day, Monday morning, Fox ate a good breakfast and seemed to be resting comfortably. Shortly after seven p. m. the Doctor again visited him and found that he had eaten a good dinner and was resting easily. At ten-thirty p. m., some three hours later, the doctor, in response to an emergency call from the hospital, returned and found that the patient was suffering from 'acute pulmonary edema of the lungs.' As a result of this disease he died Tuesday morning.

* * * * * *

"The normal procedure in such cases is for the Commonwealth to establish by competent evidence that death resulted from the injuries inflicted. Because a person dies within two days after receiving a severe injury, it does not necessarily follow that the injury was the proximate or efficient cause of death. The Commonwealth in this case relied solely on the testimony of the attending physician to supply the connecting link. This physician attended the deceased immediately after the injury and, while he said he did not make an intensive examination for internal injuries, he did make a very careful examination, and the only injury

he found was a broken leg. He further stated that there were no other bruises on the body of the deceased; that the patient responded to treatment in a normal way, and that death was the result of a disease—that is, a sudden attack of acute pulmonary edema of the lungs. When pressed to state the cause of this disease, he said that the origin was unknown. Upon being asked, 'Do perfectly well people have it?' he replied, 'Yes, and young people can be seized with it. I have seen young people die right in bed, it comes on that sudden. * * *. And you don't state at all that this condition you have described was caused by this accident to this man? No, I do not.'

"It is, therefore, apparent from the testimony of the only witness introduced by the Commonwealth who was in a position to speak with authority, that it is *equally probable* that death was the result of natural causes as it was of the injuries received in the accident.

* * * * * *

"In the case at bar the evidence was sufficient to convict the accused of driving the car while under the influence of liquor, or to convict him of violating the statute regulating traffic upon the highways, but he was prosecuted for neither of these crimes. The indictment charged him with manslaughter. The burden was upon the Commonwealth to prove that the unlawful act of the accused was the efficient cause of the death of William Fox.

"In Williams v. Commonwealth, 130 Va. 778, 107 S.E. 655, 656, we said: ' "Where there is evidence tending to criminate, the jury is almost uncontrollably the judge of its force and weight, and of the proper inferences from the facts proven. * * *." But in the case before us the

evidence before the jury, when regarded most favorably for the commonwealth, left it, to say the least, equally probable that the death of the deceased was due to the natural cause of indigestion, as the result of overeating * * *, as that the death was due to any cause for which the accused could be said to be responsible. So that there is no evidence tending to exclude the hypothesis that the death of the deceased was due to such natural cause alone.'

"A citizen should not be deprived of his liberty or his life on a mere possibility, and the only witness introduced by the Commonwealth qualified to state the cause of death said that he did not know, and that it was merely possible that the shock produced the liquid on the lungs which resulted in the death of the deceased."

There are other cases such as People v. Nerida (Calif.App.), 29 Cal.App.2d 11, 83 P. 2d 964; Quillen v. State (Del.App.), 10 Terry 114, 49 Del. 114, 110 A.2d 445; and People v. Paulson (Ill.App.), 80 Ill.App. 2d 44, 225 N.E.2d 424 which give recognition to the fact that in a homicide case the State bears the burden of proving the cause of death beyond a reasonable doubt, but which rest upon evidence which indicated a relation between the wound and death.

III

Let us suppose that there had been competent proof that a blood clot which appears in the left leg cannot have originated in the right.[3]

Under such a hypothesis the deceased did not die from an embolus which broke away from the shotgun wound. Rather, the embolism can only be attributable—under the State's theory to support the verdict—to inactivity. However, bed rest is only shown

3. See Howell v. Charles H. Bacon Co., D.C., 98 F.Supp. 567; also, Berryhill v. Nichols, 171 Miss. 769, 158 So. 470; Stockman v. Tremont Lbr. Co., La.App., 155 So. 30; Mercep v. State Ind. Acc. Com., 167 Or. 460, 118 P.2d 1061; Norris v. Ind. Com., 90 Utah 256, 61 P.2d 413; McMahan v. Mut. Ben. Assoc., 28 Wash.2d 202, 182 P.2d 4; Lindeken v. Lowden, 229 Iowa 645, 295 N.W. 112; Michael v. Roberts, 91 N.H. 499, 23 A.2d 361.

to be precedent to and not an efficient con-dition of Welch's wife's demise.

■ The links in the instant chain of causation are even weaker than the sought for concatenation in Bush v. Commonwealth, 78 Ky. 268. Accordingly, the corpus delicti has not been established to the required degree prevailing in the trial of indictable offenses.

The judgment below is due to be reversed and the cause there remanded for a new trial.

Reversed and remanded.

PRICE, Presiding Judge (dissenting).

Andy Welch, Jr., appeals from a conviction of second degree murder for the killing of his wife, Olivia Welch, by shooting her with a gun.

The undisputed evidence shows that during an argument between defendant and deceased, Olivia slapped Andy and ran into the front room. Andy went in another room and got his gun. When Olivia ran from the room Andy "pushed the gun on her like that." She ran out the back door and into the pump house. Andy walked to the potato house at the edge of the field and waited until Olivia emerged from the pump house and started back in the house. When she started up the steps he shot her in the leg. The shooting occurred on September 7, 1968. Death occurred November 13, 1968.

When the state had rested its case in chief, defense counsel moved that the state's evidence be excluded for the failure to prove that the gunshot wound was the cause of death. The motion was denied.

Dr. Jack Dozier testified deceased was brought to his office on September 7, 1968. She had a gunshot wound in the lower third of the femur of the right leg. Dr. Dozier referred her to Dr. Tullos for surgery. She was admitted to the Thomasville hospital and sometime later was released.

Dr. Dozier saw her again on November 7, a week before she died. The leg had not healed, but it was healing. She had a pulmonary embolus on the opposite side.

Dr. Dozier testified the cause of death was a pulmonary embolus, a blood clot that dislodged from her left leg and lodged in her lung. The blood clot was caused by inactivity. Her inactivity was due to her inability to maneuver very well because of pain caused by the gunshot wound and the operation following it for the purpose of putting a pin in her leg.

On cross examination Dr. Dozier stated the blood clot probably started in deceased's good leg, the left leg, which was not wounded by the shot. There was no evidence of its having started in the wounded leg. Active people could have blood clots, usually there is inactivity of some sort related to it. There is really no definitely known scientific reason for a blood clot. It can be a combination of several factors—the viscosity of the blood, the slowing down of the blood flow and the concentration of the cells in the blood.

The doctor testified on redirect examination that Olivia Welch was his patient prior to September, 1968; that she was working, able to perform physical manual labor and he did not believe she had any blood circulation problem prior to receiving the gunshot wound.

Defense counsel insists the shot was not the cause of death; that the evidence failed to establish any causal connection between the wound and the death of Olivia Welch, but on the contrary showed that death was due to an intervening cause.

It was the opinion of the treating physician that deceased would not have sustained a pulmonary embolus but for the gunshot wound and the poor physical condition which naturally followed.

We have said the question whether under all the circumstances death was the result of the wound inflicted by a defendant

is one of fact to be determined by the jury. If there is any proof, direct or circumstantial, to establish the corpus delicti, the sufficiency of such proof is for the jury and not for the court. Gurley v. State, 36 Ala.App. 606, 61 So.2d 137; Cook v. State, 43 Ala.App. 304, 189 So.2d 595. There was sufficient evidence of causal connection to establish the corpus delicti. The weight of such evidence was for the jury. There was no error in denying defendant's motion to exclude the evidence.

I would affirm.