**STATE of Tennessee, Appellee,**

v.

**Russell DAVIS, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Feb. 24, 1988.

Permission to Appeal Denied by Supreme Court May 31, 1988.

Edward Witt Chandler, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen., James W. Thompson, Asst. Atty. Gen., Nashville, James J. Challen, III, John W. Overton, Jr., Asst. Dist. Attys., Memphis, for appellee.

## OPINION

LLOYD TATUM, Special Judge.

The defendant, Russell Davis, was charged in a two-count indictment with first-degree premeditated murder and murder in the perpetration of rape. The jury found him guilty of voluntary manslaughter. He was sentenced to 10 years incarceration as an especially aggravated offender (Range II). The sentence was ordered to be served consecutively to four previous sentences.

The defendant presents five issues on this appeal. He attacks the sufficiency of the evidence, the validity of a search of his truck and his residence, the admissibility in evidence of medical records of the victim, and the trial court's jury instructions. After considering the issues, we find that the judgment of the trial court must be affirmed.

We first address the issue attacking the sufficiency of the evidence. The victim, Bernice Pleasure, a resident of Memphis, disappeared on November 24, 1985. She was last seen at a 7–Eleven Store between 7:30 and 8:00 o'clock p.m. on that date.

Between 8:30 and 9:00 o'clock p.m. on the date of the victim's disappearance, a neighbor heard a female scream coming from the direction of the victim's residence.

On December 28, 1985, the nude body of the victim, Bernice Pleasure, was found in a grassy field located in Memphis, Shelby County, Tennessee. The body was determined to be that of Bernice Pleasure by the comparison of Ms. Pleasure's dental chart with the teeth of the deceased by a specialist in the field of forensic odontology.

An autopsy was performed by Dr. James Spencer Bell, an expert in the field of anatomical and forensic pathology. Dr. Bell testified that the cause of death was "blocked trauma to the neck; the fracture of the organs of the neck, specifically the larynx and hyoid bone."

The victim's son, David Pleasure, testified that a plumber had worked at the residence of he and his mother shortly before her disappearance.[1] About one week before his mother's disappearance, the plumber came unexpectedly to the residence at approximately 11:00 o'clock p.m. David informed the plumber that his mother was sleeping and refused to permit the plumber to speak with her. The plumber then told the witness, "I'll just come back tomorrow."

Mr. Pleasure identified a photograph of a black pickup truck as one appearing to be the same as that driven by the plumber.[2] The witness also identified a photograph of the appellant at the police station as being the plumber who worked at their house. He also identified the defendant at trial as the same plumber.

The serial number of a Black & Decker Drill, found at the defendant's home, matched the serial number on a Black & Decker Drill box found within 50 yards from the victim's nude body. In the defendant's truck, police found a Bernzomatic propane fuel cylinder with torch and oxygen tank. Police officers had previously found a Bernzomatic tank box within 50 yards of the victim's body in the field.

---

1. The plumber was working for "Homecrafter's Warehouse."

2. An identical truck was owned by the defendant.

Police also found a lady's cigarette lighter and a beige straw belt in the appellant's truck. The victim's daughter identified the belt as one that she had bought and had left at the victim's residence. She related that she and her mother had occasionally worn each other's clothing.

Expert testimony revealed the presence of sperm in both the victim's vagina and anus. It was further established that the substances found were consistent with the male performer being a non-secreter. It was also established that the defendant was a non-secreter.[3]

When arrested,[4] and after being given Miranda warnings, the defendant gave a statement to police. When asked where he had worked, he did not mention that he had worked at Homecrafters until Homecrafters was specifically mentioned by the police. He first denied knowing the victim other than having learned about her from the newspaper and television, but subsequently admitted knowing her after being informed that the victim's son could identify a plumber from Homecrafters who had done work at the victim's home. When the police asked what he was doing on the day the victim disappeared, without mentioning a day or date, the defendant stated, "That was a Sunday and I was in church."

The defendant introduced several witnesses who testified that he was at home from 5:30 p.m. on November 24, 1985, until the next morning.

■ The evidence would have supported a conviction for murder. The jury could have concluded, from the evidence, that the victim was abducted by the defendant at the victim's home, taken to the grassy field in his truck, and there raped and killed by the defendant with a blunt instrument. There is no evidence that the homicide was committed "upon a sudden heat." [5] Even so, this does not permit reversing as the verdict of the jury establishes that the defendant's alibi defense was not accepted.

In *State v. Mellons,* 557 S.W.2d 497 (Tenn.1977), the defendant was indicted on two counts of second-degree murder and found guilty of voluntary manslaughter. In dealing with an identical question as to whether the evidence would support the conviction in the absence of proof that the homicide was committed "upon a sudden heat," the Supreme Court said:

> " 'A homicide of this character, generally speaking, is either involuntary manslaughter [citing cases] or second degree murder....' *Edwards v. State,* 202 Tenn. 393, 304 S.W.2d 500, 502 (1957). Rarely will the facts be such as to show that the defendant has committed voluntary manslaughter. In the instant case, there is no question but that the evidence in the record fails to satisfy the legal requirements of the crime of voluntary manslaughter. Manslaughter is defined in T.C.A. § 39–2409 as 'the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act.' There is no evidence which indicates that the defendant caused the death of the two girls 'upon a sudden heat.'

However, that, of itself, does not necessarily require that the conviction of the defendant for voluntary manslaughter be reversed. Under T.C.A. § 40–2520,

> [u]pon an indictment for any offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment and guilty of any degree inferior thereto....

Furthermore, under T.C.A. § 40–2518,

> [i]t [is] the duty of all judges charging juries in ... prosecutions for any felony when two (2) or more grades or classes of offense may be included in

---

**3.** If a person is a secreter, his blood type can be detected from his body fluids, i.e. saliva, semen, etc. No detection of blood type can be made from a non-secreter. About 20% of the human race are non-secreters.

**4.** Apparently the defendant was arrested on January 6, 1986.

**5.** This is one of the elements of voluntary manslaughter. See T.C.A. § 39–2–221.

the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so. Voluntary manslaughter is a lesser degree of homicide than second degree murder, the offense with which the defendant was charged in this case. *Templeton v. State,* 146 Tenn. 272, 240 S.W. 789 (1922); *Bartlett v. State,* 1 Tenn.Cr. App. 60, 429 S.W.2d 131 (1968). If the statutes cited are taken literally, they mandate an instruction concerning and sanction a conviction of voluntary manslaughter in all cases in which the jury is properly charged on second degree murder. However, as these statutes have been interpreted, it is not reversible error for the trial judge to fail to give an instruction on a lesser degree of an offense or on a lesser included offense of which there is no evidence in the record. *Owen v. State,* 188 Tenn. 459, 221 S.W.2d 515 (1949); *Powers v. State,* 117 Tenn. 363, 97 S.W. 815 (1906). To the contrary, the giving of instructions on offenses for which there is no evidence in the record is to be avoided. *Whitwell v. State,* 520 S.W.2d 338 (Tenn.1975). But the giving of such an instruction, even though it results in conviction of a lesser included offense not supported by the evidence, though error, is not necessarily reversible error. On appeal, a conviction of a lesser degree of the crime charged, or of a lesser included offense, will be upheld, even if there is no evidence in the record to establish the technical elements of that crime, if the evidence demands a conviction of a higher degree of homicide than that found by the verdict, and there is either no evidence in support of acquittal of the greater crime, or if there is, the verdict of the jury clearly indicates that the evidence in support of acquittal was disbelieved, on the theory that the defendant was not prejudiced by the charge and the resulting verdict. *See Reagan v. State,* 155 Tenn. 397, 293 S.W. 755 (1927); *Craig v. State,* 524 S.W.2d 504 (Tenn.Cr. App.1975); *Howard v. State,* 506 S.W.2d 951 (Tenn.Cr.App.1973). *See also* 102 A.L.R. 1019, 1026; 4 WHARTON'S CRIMINAL PROCEDURE § 545 at 29–30 (12th ed. Torcia 1976)."

We therefore hold that the judgment is valid though there was no evidence that the homicide was committed "on a sudden heat."

We find from the foregoing evidence that the other arguments made by the defendant in this issue are without merit. Circumstantial evidence was sufficient upon which a rational jury could be convinced beyond a reasonable doubt that the crime was committed by the defendant. See Rule 13(e), T.R.A.P. The issue attacking the sufficiency of the evidence is overruled.

Issue number 2 attacks the legality of the search of the defendant's truck and issue number 3 attacks the legality of the search of the defendant's premises. The defendant concedes that the record is inadequate to support these issues. The issues are not supported by argument, citation to authority, or references to the record. They are waived. Rule 10(b), Rules of the Court of Criminal Appeals; Rule 27(a)(7), T.R.A.P.; *State v. Galloway,* 696 S.W.2d 364 (Tenn.Crim.App.1985).

■ In the next issue, the defendant complains that the trial court overruled his objection to medical records of the Tennessee Chest Disease Hospital. The only basis for the objection that is argued on appeal was that the evidence is irrelevant. The defendant argues that the record from the year 1969 identified the person who was the subject of the record only as "Bernice Pleasure," without further identification. He states that there is no other evidence to show that "Bernice Pleasure", referred to in the medical record, was the same "Bernice Pleasure", who was the victim in this case. We think that the identical names are sufficient to render the evidence of the medical records admissible. The fact that there was no identification on the medical records other than the name "Bernice Pleasure", goes to the weight of the evidence and not to its admissibility.

■ The defendant also argues that evidence that the victim had blood type B in 1969 was inadmissible absent affirmative

evidence that one's blood type does not change. Evidence of the victim's blood type in 1969 was circumstantial evidence that her blood type was the same at the time of her death.

The defendant also argues in his brief that the conclusions in the medical report that the victim had blood type B was hearsay and violated his Sixth Amendment constitutional right to confront witnesses. This ground for objection was not raised in the trial court; hence, it is waived. *Hughes v. State*, 145 Tenn. 544, 238 S.W. 588 (1922); *Patterson v. State*, 184 Tenn. 39, 195 S.W.2d 26 (1946). When asked by the trial court the grounds for objection to the medical records, defense counsel responded "Rule 16 of Discovery, and Relevancy." These were the only two grounds argued or brought to the attention of the trial judge. The defendant cannot now assign different grounds on appeal. See Rule 36(a), T.R.A.P.

In his last issue, the defendant complains that the trial judge failed to charge the jury as to the "element of causation." It is not clear, but the defendant apparently argues that the jury was not properly charged that before convicting the defendant of voluntary manslaughter, it must be shown that the defendant unlawfully and intentionally caused the death of the victim. With respect to the offense of voluntary manslaughter, the trial judge charged the jury in part as follows:

"Any person who intentionally kills another person, without malice, but upon a sudden heat of passion produced by provocation adequate to obscure the reason of an ordinary person, is guilty of voluntary manslaughter.

For you to find the defendant guilty of voluntary manslaughter, the state must have proven, beyond a reasonable doubt:

(1) that the defendant unlawfully killed the alleged victim;

(2) that the killing was willful; that is, the defendant intended to take the life of the alleged victim; ..."

The defendant made no special request for jury instructions on this point to the trial judge. He has not related to us what the trial judge should have said in the instructions that he did not say. We think that the above instruction was adequate.

All of the issues presented are overruled. The judgment of the trial court is affirmed.

DWYER and SCOTT, JJ., concur.

OPINION ON PETITION TO REHEAR

LLOYD TATUM, Special Judge.

The defendant has filed a petition to rehear in which he takes us to task for overlooking his argument with regard to the failure of proof as to the "element of causation." We did not overlook this argument although we did not consider it worthy of elaborate discussion. After reviewing the evidence in the opinion, we stated that the evidence would support a conviction for murder and the finding of the jury that the victim was "killed by the defendant with a blunt instrument."

In support of his contention that the evidence did not establish the "element of causation," the defendant cites *Keller v. State*, 155 Tenn. 633, 299 S.W. 803 (1927); *Letner v. State*, 156 Tenn. 68, 299 S.W. 1049 (1927); *Fine v. State*, 193 Tenn. 422, 246 S.W.2d 70 (1952); *Seagroves v. State*, 198 Tenn. 633, 281 S.W.2d 644 (1955). These cases hold in summary that the State must prove that the cause of death was from a criminal agency and that a conviction for homicide cannot rest on conjecture or speculation as to the cause of death. We stated in our original opinion that the evidence was sufficient to establish the homicide by a blow to the neck with a blunt instrument. There is no evidence that this did not cause the death of the victim or that any other cause intervened. The cause of death was not left to conjecture or speculation.

Other arguments are advanced in the Petition to Rehear. We have considered them and adhere to our original opinion.

The Petition to Rehear is overruled.

DWYER and SCOTT, JJ., concur.