# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 13, 2003

## STATE OF TENNESSEE v. JEFFERY LEE MASON

**Appeal from the Circuit Court for Giles County**
**No. 10123     Stella Hargrove, Judge**

---

### No. M2002-01709-CCA-R3-CD - Filed May 19, 2004

---

The defendant, Jeffery Lee Mason, was indicted for attempted first degree murder, felony escape and theft over $1000. He was convicted by a jury of attempted voluntary manslaughter and theft over $1000. He entered a plea of guilty to felony escape. The trial court imposed sentences of four years for attempted voluntary manslaughter, four years for theft over $1000, and two years for felony escape, to be served consecutively for an effective sentence of ten years. In this appeal of right, he asserts (1) that the evidence is insufficient to support the convictions for attempted voluntary manslaughter and theft over $1000; (2) that the trial court erred by instructing the jury on attempted voluntary manslaughter as a lesser included offense of attempted first degree murder; and (3) that the sentence is excessive. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. DAVID G. HAYES, J., filed a dissenting opinion.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Jeffery Lee Mason.

Paul G. Summers, Attorney General & Reporter; Jennifer Bledsoe, Assistant Attorney General; and Patrick Butler and Beverly White, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On June 13, 2001, Deputy Wayne Graves of the Giles County Sheriff's Department transported the defendant, who was an inmate at the Giles County Jail, to the Giles County Health Department in Pulaski for the purpose of medical treatment. Upon their arrival, Deputy Graves escorted the defendant, who was wearing handcuffs and leg irons, to the receptionist area, where the officer re-positioned the defendant's handcuffs from behind his back to the front of his body so that the defendant could complete "some paperwork." After the defendant signed the necessary

documents, Deputy Graves and the defendant waited in the lobby with other patients and clinic staff for approximately five minutes until nurse Betty Hughes called them into an examining room.

Once inside the examining room, Ms. Hughes asked Deputy Graves to remove the defendant's handcuffs so that she could perform the medical procedure. The defendant's legs remained shackled. According to Deputy Graves, the defendant was cooperative throughout the procedure. As Ms. Hughes handed Deputy Graves some medication at the conclusion of the procedure, the defendant grabbed the deputy "in a bear hug," pinned Deputy Graves' arms to his side, and told him to "give it up." The two men scuffled around the room as the defendant attempted to remove Deputy Graves' gun from its holster. Ms. Hughes pressed a "panic button" and left the room.

The defendant eventually forced Deputy Graves to the floor, where he hit hard on his right elbow and fell onto his back. Deputy Graves testified that "the next thing I remember, I seen the gun go across in front of my face. He had my weapon." The defendant then pointed the gun at Deputy Graves' chest and said, "I'm going to kill you, Wayne." According to the officer, the defendant attempted to fire the weapon but it jammed. As Deputy Graves reached for his pepper spray, however, he saw the chamber of the gun reset. The defendant then remarked, "I see the spray. Put it up, or I'm going to shoot you." After Deputy Graves returned the pepper spray to his belt, the defendant took the keys to the patrol car and two extra clips for the gun and ran from the examination room.

At that point, Deputy Graves used his portable radio to call for assistance. Afterwards, he was taken to the emergency room because his blood pressure was elevated and he had suffered an injury to his elbow. The value of the weapon and ammunition taken by the defendant was $800.

Ms. Hughes testified that while the defendant's handcuffs had been removed so that she could provide the appropriate medical treatment, his legs remained shackled. She recalled that after she completed the procedure, she stood to leave and then heard a noise and saw that the defendant had grabbed Deputy Graves, having "one arm around his throat and shoulder area, and the other hand . . . on his gun." She stated that when Deputy Graves placed "both hands on his gun, trying to keep [the defendant] from getting it," she pressed an "alarm button" to notify the front desk of the trouble. She testified that she then left the room to direct other patients and staff to evacuate the building. Shortly thereafter, the defendant ran out the front door of the Health Department, "jumped" into Deputy Graves cruiser, and "sped away." Ms. Hughes suggested that Deputy Graves, who she described as "really shaken," be taken to the emergency room.

Jeff Jenkins, who was in his car at an intersection, saw a sheriff's department cruiser speed toward the stop sign, brake suddenly, and then slide into the intersection. When Jenkins noticed that the driver was wearing an orange jumpsuit of the type generally worn only by inmates, he telephoned 911 and turned to follow the cruiser. The cruiser stopped at a residence next door to Jenkins' parents and the driver, who was carrying a gun and wearing leg irons, "hobbled across the yard." The Sheriff's Department used Jenkins' parents house as a command post during a standoff with the defendant.

After receiving the call from Jenkins, Sheriff Eddie Bass drove to the address where the defendant had parked Deputy Graves' cruiser. Officers began to search the area to determine whether the defendant was inside the residence and Wildlife Officer Jim Potts discovered that the glass on the door to the residence had been broken. Officer Potts called out to the defendant, who answered from inside the residence. Both the defendant's ex-girlfriend and the couple's toddler, who were inside, were released unharmed. During negotiations, the defendant remarked that "he would do whatever it took to be shipped to the Department of Correction," implying that he had been mistreated in the county jail. He surrendered to authorities after a standoff that lasted between four and seven hours. Sheriff Bass, who acknowledged that the defendant was motivated by his perceived mistreatment in the county jail, also testified that the value of the cruiser taken by the defendant was between $7000 and $8000.

I

The defendant asserts that the evidence is insufficient to support the convictions for attempted voluntary manslaughter and theft over $1000. He first contends that the state failed to establish that the attempt to kill Deputy Graves occurred while he was in a state of passion produced by adequate provocation, an essential element of the statute defining the crime of attempted voluntary manslaughter. Secondly, the defendant complains that the state failed to establish that he intended to deprive the sheriff's department of the cruiser or the weapon, an essential element of the theft. The state submits that the evidence was sufficient to support attempted first degree murder, basically contending that if the evidence of the greater crime was established, surely there was sufficient proof of the lesser crime of attempted voluntary manslaughter. It submits that any act of leniency on the part of the jury should not negate a conviction of the lesser crime.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

The defendant, originally charged with attempted first degree murder, was convicted by the jury of attempted voluntary manslaughter. The trial judge approved the verdict. "Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by

adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). Attempt is defined as follows:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101(a), (b).

Here, the evidence established that Deputy Graves transported the defendant in shackles and handcuffs to the Giles County Health Department for medical treatment. The victim, by virtue of his office, had the legal authority over and the physical control of the defendant, a jail inmate. Being in a public place in the presence of others while shackled, handcuffed, and under the control of an armed guard are circumstances which might have been viewed by a sympathetic jury as provocative to the prisoner, at least by a subjective understanding of the term.[1] Further, the defendant implied that he had endured mistreatment in the county jail, stating a preference for a prison sentence. The testimony of the sheriff suggested that the attack upon the victim was motivated by the defendant's dissatisfaction with his treatment at the jail. From these minimal circumstances, it is our view that the jury acted within its prerogative by inferring that the defendant acted in a state of passion produced by "adequate provocation." While certainly (and ironically) the evidence was sufficient to support a conviction for the charged offense of attempted first degree murder, it is at best only marginally sufficient to support a finding of passion produced by provocation which is a necessary element of the crime of attempted voluntary manslaughter.[2] Under these unusual circumstances, the

---

[1] The Tennessee Constitution is unique in that in criminal cases, the jury is the judge of the law and the facts. Tenn. Const. art. I, § 19; Wright v. State, 217 Tenn. 85, 394 S.W.2d 883 (1965).

[2] This case highlights a problem that occurs because of the way our legislature has defined and our courts have typically interpreted the crime of voluntary manslaughter as a separate offense rather than a mitigated murder. Such treatment puts the state in the unusual position of trying to prove an intentional or knowing killing and at the same time trying to prove that the killing is mitigated because it was committed in a state of passion produced by adequate

(continued...)

-4-

verdict rendered is a far more just result than an acquittal on the lesser offense and any order for a new trial on even lesser charges. Our analysis in the next section of this opinion provides an alternative means of affirming this conviction.

The defendant has also asserted that the evidence is insufficient to support the conviction for theft over $1000 because the state failed to establish that he intended to deprive the sheriff's department of its property. "A person commits theft of property if, with the intent to deprive the owner of the property, the person knowingly obtains or exercises control over the property without the owner's effective consent." "Deprive," in this instance, means to "[w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." Tenn. Code Ann. § 39-11-106(a)(8)(A).

In the light most favorable to the state, the evidence adduced at trial established that the defendant forced Deputy Graves to the floor, pointed a gun at him, and then removed the keys to his cruiser from his belt and drove away. He was followed by Jenkins, who alerted authorities to his course. He parked the vehicle at a residence and remained inside during a lengthy standoff with police. Under these circumstances, it is our view that the jury, as the judge of the facts, could have found that the defendant intended to deprive the sheriff's department of the cruiser.

II

In a related issue, the defendant asserts that because the evidence is insufficient to support a conviction for voluntary manslaughter, the trial court erred by providing an instruction on this offense. The state submits that the instruction was proper.

The question of whether a given offense should be submitted to the jury as a lesser included offense is a mixed question of law and fact. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. Id.; see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court has a duty "to give a complete charge of the law applicable to the

---

[2](...continued)

provocation. In a case like this, where the defendant stands charged with attempted first degree murder, a much more serious offense, the state should not be expected to prove or even try to prove that the killing was mitigated by passion produced by adequate provocation. In these cases, the burden, for all practical purposes, falls on the defendant to establish the elements of passion and provocation; that burden then shifts to the state to prove the absence of those factors. In consequence, passion and provocation most often operate as a partial defense in a first or second degree murder prosecution or, as in this case, an attempted first degree murder prosecution. That said, it is perhaps time that the law is changed to conform to the reality that occurs in the trial court.

Judge Smith suggests that this might be done by considering "passion produced by adequate provocation" as a partial defense under Tennessee Code Annotated section 39-11-203(e)(1), which provides that "[a] ground of defense, other than one (1) negating an element of the offense or an affirmative defense, that is not plainly labeled in accordance with this part has the procedural and evidentiary consequences of a defense." Tenn. Code Ann. § 39-11-203(e)(1). Ultimately, however, this matter is perhaps one more appropriately resolved by the legislature than the courts.

facts of a case." <u>State v. Harbison</u>, 704 S.W.2d 314, 319 (Tenn. 1986); <u>see also</u> Tenn. R. Crim. P. 30.

In <u>Burns</u>, our supreme court adopted a modified version of the Model Penal Code in order to determine what constitutes a lesser included offense:

An offense is a lesser included offense if:
(a) all of its statutory elements are included within the statutory elements of the offense charged; or
(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
(1) a different mental state indicating a lesser kind of culpability; and/or
(2) a less serious harm or risk of harm to the same person, property or public interest, or
(c) it consists of
(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b).

6 S.W.3d at 466-67. Attempted voluntary manslaughter is a lesser included offense of attempted first degree murder under the <u>Burns</u> test. <u>State v. Dominy</u>, 6 S.W.3d 472, 477 n.9 (Tenn. 1999); <u>State v. William Binkley</u>, No. M2001-00404-CCA-R3-CD (Tenn. Crim. App., at Nashville, Apr. 5, 2002); <u>State v. Jake Christoper Reynolds</u>, No. M2000-00210-CCA-R3-CD (Tenn. Crim. App., at Nashville, May 23, 2001).

The trial court has a duty to instruct the jury as to a lesser included offense if: (1) reasonable minds could accept the offense as lesser included; and (2) the evidence is legally sufficient to support a conviction for the lesser included offense. <u>Burns</u>, 6 S.W.3d at 469; <u>see also</u> <u>State v. Langford</u>, 994 S.W.2d 126, 128 (Tenn. 1999). Moreover, our supreme court has held that trial courts "must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. The evidence, not the parties, controls whether an instruction is required." <u>State v. Allen</u>, 69 S.W.3d 181, 188 (Tenn. 2002). Our high court observed that the "jury is not required to believe any evidence offered by the State," and held that the authority of the jury to convict on a lesser-included offense may not be taken away, even when proof supporting the element distinguishing the greater offense from the lesser offense is uncontroverted. <u>Id.</u> at 189.

As indicated, a subtle form of provocation could have been inferred by the jury as the adjudicators of the facts. The defendant may have been embarrassed or even humiliated by being escorted to the Health Department in shackles and handcuffs and forced to wait in the lobby, in the

presence of clinic patients and staff, under armed guard. Further, he was required to submit to a medical procedure in the presence of Deputy Graves. His medication and an explanation of its purpose were given to the deputy rather than the defendant. During his standoff with the sheriff and other law enforcement personnel, the defendant implied that he had been mistreated at the jail . Later, the sheriff testified that he believed that the attack on the deputy was motivated by the defendant's dissatisfaction with his circumstances at the county jail. In our view, this evidence justified the instruction on attempted voluntary manslaughter.

Moreover, when presented with a similar situation in State v. Davis, 751 S.W.2d 167 (Tenn. Crim. App. 1988), this court affirmed a conviction of a lesser offense. In Davis, the defendant was indicted for first degree murder and the jury found him guilty of voluntary manslaughter. On appeal, Davis argued the record was devoid of any evidence showing provocation. While agreeing that there was no evidence that the crime was committed on "a sudden heat," this court rejected his claim for an acquittal. Id. at 170. The holding in Davis relied upon our supreme court's decision in State v. Mellons, 557 S.W.2d 497 (Tenn. 1977), wherein our high court ruled that the giving of an instruction on a lesser included offense which is not supported by the evidence did not necessarily result in reversible error:

> On appeal, a conviction of a lesser degree of the crime charged, or of a lesser included offense, will be upheld, even if there is no evidence in the record to establish the technical elements of that crime, if the evidence demands a conviction of a higher degree of homicide than that found by the verdict, and there is either no evidence in support of acquittal of the greater crime, or if there is, the verdict of the jury clearly indicates that the evidence in support of acquittal was disbelieved, on the theory that the defendant was not prejudiced by the charge and the resulting verdict.

Id. at 499. Here, the evidence would have supported a conviction for attempted first degree murder or attempted second degree murder. Accordingly, under the holdings in Davis and Mellons, the conviction for attempted voluntary manslaughter should be affirmed on the theory that any error in charging the lesser of offense was harmless.

### III

As his final claim, the defendant asserts that his sentence is excessive. Specifically, he contends that the trial court improperly applied and weighed the enhancement factors and erred by imposing consecutive sentencing. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

In arriving at the sentence of ten years, the maximum within the range, the trial court applied the following enhancement factors to each of the convictions:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
(2) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
(3) the defendant possessed or employed a firearm during the commission of the offense; and
(4) the felony was committed on escape status or while incarcerated for a felony conviction.

See Tenn. Code Ann. § 40-35-114 (2), (9), (10), (15) (2003).[3] In mitigation, the trial court found that the defendant had ultimately surrendered to authorities. See Tenn. Code Ann. § 40-35-113(13) ("Any other factor consistent with the purposes of this chapter."). The trial court applied great weight to the enhancement factors and "very slight" weight to the single mitigating factor.

The defendant concedes that factors (2), that he has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (9), that he has a previous history of unwillingness to comply with a sentence involving release in the

---

[3]The sentencing hearing occurred after the effective date of an amendment to Tennessee Code Annotated section 40-35-114 which renumbered original enhancement factors (1) thru (20) and included as enhancement factor (1) that "the offense was an act of terrorism, or was related to an act of terrorism." Accordingly, we will use the new numbering.

community, are applicable. He also concedes that factor (10), that he possessed or employed a firearm during the commission of the offense, is applicable to the conviction for attempted voluntary manslaughter. He argues, however, that those factors are entitled to little weight. The weight to be assigned to the appropriate enhancement and mitigating factors falls within the sound discretion of the trial court so long as that court complies with the purposes and principles of the 1989 Sentencing Act and its findings are supported by the record. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). In our view, the record supports the trial court's decision to place great weight on these enhancement factors.

The defendant asserts that the trial court should not have applied factor (10), that he possessed or employed a firearm during the commission fo the offense, to the conviction for theft over $1000 because Deputy Graves' weapon was included as part of the property taken in that count. Deputy Graves testified that the value of the weapon was $800 and Sheriff Bass testified that the value of the cruiser was between $7000 and $8000. Because the value of the cruiser was sufficient to support the conviction, it is our view that the trial court did not err by applying this factor to the conviction for theft.

The defendant contends that factor (15), that the felony was committed on escape status or while incarcerated for a felony conviction, should not have been applied to any of the convictions because the defendant was at the Health Department when the crimes occurred. This claim is without merit. See Laird v. State, 565 S.W.2d 38, 39-40 (Tenn. Crim. App. 1978) (holding that defendant was incarcerated when he jumped from back of county work truck which was transporting an inmate work crew). This factor would not apply, however, to the conviction for escape because it is an element of that offense. See Tenn. Code Ann. § 39-16-605(b)(2); Tenn. Code Ann. § 40-35-114.

In sum, the trial court correctly applied factors (2), (9), (10), and (15) to the convictions for attempted voluntary manslaughter and theft over $1000. Factors (2), (9), and (10) were appropriately applied to the conviction for felony escape. Under these circumstances, it is our view that the maximum sentences were warranted.

The defendant also complains that the trial court erred by imposing consecutive sentences. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[4] exist:

(1)  The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
(2)  The defendant is an offender whose record of criminal activity is extensive;
(3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6)  The defendant is sentenced for an offense committed while on probation; or
(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

In imposing consecutive sentences, the trial court made the following findings:
[H]e clearly was guilty of felony escape.  And my understanding is that has to run consecutive, under our sentencing principals.  And so, for the record, that is the primarily [sic] reason for the consecutive sentencing.
Also for the record, the Court finds the following:  That this defendant is an offender whose record of criminal activity is extensive.  This defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high.  And

---

[4]The first four criteria are found in Gray.  A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion.  See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

-10-

number three, that he is being sentenced for an offense committed while he is on probation.

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, considered the most subjective of the classifications and the most difficult to apply, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." Wilkerson, 905 S.W.2d at 938.

The record does not support the trial court's finding that the defendant was on probation at the time of the offense because the evidence established that his probation had been revoked and that he was serving a sentence of incarceration. Consecutive sentencing is appropriate, however, because the defendant qualifies as a dangerous offender and because his record of criminal activity is extensive, consisting of some seventeen prior adult and juvenile convictions. Further, while the trial court failed to specifically find that an extended sentence reasonably related to the severity of the offenses and was necessary to protect the public against further criminal conduct by the defendant, the record establishes that consecutive sentencing is appropriate. The defendant attacked Deputy Graves in a clinic occupied by members of the public. After taking the deputy's weapon, he tried more than once to fire it, but it was jammed. He then ran through the Health Department with the gun, now ready to fire, in his hand. He drove to a residence where he remained in an armed standoff with police for several hours. His ex-girlfriend and child were kept as hostages.

In our view, the defendant's behavior demonstrated little or he had no regard for human life and no hesitation about committing a crime in which the risk to human life was high. The effective sentence reasonably relates to the seriousness of the offenses. In addition, the aggregate sentence is necessary to protect the public from the defendant.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE