IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Opinion on Remand

## STATE OF TENNESSEE v. TIMOTHY PRESTON RUSSELL

**Appeal from the Criminal Court for Knox County**
**Nos. 80135A, 84456, 84457, & 84458**
**James B. Scott, Special Judge; Ray L. Jenkins, Judge**

---

**No. E2009-01053-CCA-RM-CD - Filed July 29, 2009**

---

The Defendant, Timothy Preston Russell[1], pled guilty to one count of theft of property valued $10,000 or more but less than $60,000, a Class C felony, and three counts of theft of property valued $1,000 or more but less than $10,000, a Class D felony. He was sentenced to eight years as a Range II, multiple offender for the Class C felony and six years as a Range II, multiple offender for each Class D felony. Two six-year sentences were to be served concurrently to each other but consecutively to the eight-year sentence, to which another six-year sentence ran concurrently, for an effective fourteen-year sentence. The trial court denied probation and imposed incarceration. Appealing the denial of his motion to withdraw the four guilty pleas, the Defendant contends that he should be able to withdraw his guilty pleas to correct manifest injustice and that the trial court erred in not advising him that he would not be able to withdraw the guilty pleas if the court did not accept the plea agreement. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Timothy Russell, Wartburg, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; and Randall E. Nichols, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

After this court dismissed the defendant's direct appeal as untimely, this case was remanded by the Tennessee Supreme Court for consideration of the merits of the Defendant's issues. The summary of facts presented by the State at the plea hearing showed the following events. The

---

[1]The record reflects that the Defendant was charged under both a presentment and three separate indictments, although the names listed between the presentment and indictments vary. We will use the style of the case listed in the three indictments.

Defendant obtained $13,606.72 from a "kiting" scheme at a bank. The Defendant also obtained a Ford truck by writing a check for $4,300 to Mr. Christopher Crawford on a closed bank account. The Defendant advertised a Mazda for sale, and Mr. Khalid Elbasit purchased the car from the defendant for $1,500. As the Defendant never conveyed title to the car, the victim returned it and asked for his payment to be returned. The Defendant issued Mr. Elbasit a check for $1,500 drawn on a closed account. The Defendant attempted to purchase a truck from Mr. James Shipley, who would not allow the defendant to pay with a check. The truck and its title were later stolen, and the truck was not recovered. The Defendant altered the truck's title to make it appear to be the title for a Mazda, which the Defendant sold to Mr. Teddy Burk for $2,500. The Mazda had a lien on it and was repossessed by the creditor.

The transcript of the plea hearing reflects that the Defendant was advised during the hearing of (1) the right to be proven guilty beyond a reasonable doubt by a jury and the presumption of innocence; (2) the ranges possible for the offenses as a Range II, multiple offender; (3) that these convictions could be used to enhance future sentences; (4) the right to counsel; (5) the right to plead not guilty; (6) the right to confront and cross-examine adverse witnesses and to compel favorable witnesses to testify; (7) the right to be protected against compelled self-incrimination and the right to testify; and (8) the lack of a trial after the plea, with only a hearing to determine the propriety of probation. The court also clarified with the State that the Defendant had not been promised probation but instead was told he could apply for probation. The Defendant pled guilty to four felony theft charges, three of which were Class D felonies with sentences of six years as a Range II, multiple offender. The remaining felony conviction was a Class C felony with an eight-year sentence as a Range II, multiple offender.

At the probation hearing, the presentence report was entered into evidence. The State requested that the trial court impose confinement for the Defendant's sentences. The Defendant informed the court that he wanted the "most extreme alternative sentencing possible." The trial court found that in view of the Defendant's interests, behavioral record, employment history, social history, physical and mental condition, extensive prior record, refusal to conform his conduct to societal mores, the victim impact statements, the public interest, and deterrence value, confinement was necessary for the interests of the Defendant and the public as a whole.

The Defendant filed a pro se motion to withdraw his guilty pleas in which he alleged that the special judge had imposed a fourteen-year sentence to be served on enhanced probation for thirty-five percent of the sentence, with the balance to be served on probation and that the subsequent trial judge had rejected this manner of service and imposed confinement. The trial court denied the motion after finding that the Defendant had signed the waiver of right to jury trial form on which it stated that the agreed sentence was "only a recommendation and that the Court is not bound by this recommendation in any way." The trial court found that the Defendant understood the court had the discretion to accept his plea and either to deny or to impose probation.

The Defendant filed a pro se notice of appeal. In his brief, the Defendant compares his case with State v. Crowe, 168 S.W.3d 731, 742 (Tenn. 2005), and argues his guilty pleas should be withdrawn because he entered them under a misunderstanding of their effect. He claims the language on the "WAIVER OF TRIAL BY JURY AND REQUEST FOR ACCEPTANCE OF

PLEA OF GUILTY" is ambiguous and should be construed against the State. He contends that because the handwritten terms of the plea agreement as reflected in this waiver form say "Apply ENHANCED PROBATION" next to "to serve" with lines drawn through "serve" to negate it, he did not understand that he was only applying for probation and was not guaranteed probation for his four felonies. He claims the word "serve" was not scratched out when he signed the agreement.

The State responds that because the Defendant did not meet his burden of showing that the pleas should be withdrawn to correct manifest injustice, the trial court properly denied the motion to withdraw the pleas. The State claims the Defendant was not promised probation.

Tennessee Rule of Criminal Procedure 32(f) permits a defendant to withdraw a guilty plea under certain circumstances. If a sentence has yet to be imposed, the trial court may grant a motion to withdraw "for any fair and just reason." Tenn. R. Crim. P. 32(f)(1). If the defendant has been sentenced, a trial court may still grant a motion to withdraw a guilty plea before the judgment becomes final but only "to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). Our supreme court has held that "a judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of the sentence." State v. Green, 106 S.W.3d 646, 650 (Tenn. 2003). "Whether a defendant should be permitted to withdraw a plea is a matter addressed to the sound discretion of the trial court, regardless of when the motion was filed." Crowe, 168 S.W.3d at 740.

The Defendant filed his motion to withdraw his guilty pleas after he was sentenced, and the standard to evaluate the Defendant's motion is that of "manifest injustice." See State v. Turner, 918 S.W.2d 346, 354 (Tenn. Crim. App. 1995); Tenn. R. Crim. P. 32(f)(2). "Manifest injustice" has been interpreted to mean situations such as

> (1) the plea 'was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily'; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

Crowe, 168 S.W.3d at 742 (footnotes omitted). However, "a defendant's change of heart about pleading guilty or a defendant's dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal." Id. at 743. The Defendant has the burden of demonstrating that the plea should be withdrawn to prevent manifest injustice. See Turner, 918 S.W.2d at 355.

We agree with the State that the Defendant has not demonstrated that the trial court abused its discretion in denying the Defendant's motion to withdraw his guilty pleas. In Crowe, our supreme court concluded that a defendant had demonstrated manifest injustice when he entered a

nolo contendere plea to facilitation of first degree murder but did not understand the nature of the charges and the legal definition of "facilitation." Crowe, 168 S.W.3d at 749-50. It held that the defendant's pleas had not been intelligent, knowing, and voluntary. Id. at 749. Here, though, the Defendant knew the nature of the charges, and the facts of the case demonstrating the essential elements of each felony theft offense were stated at the plea hearing.

Instead, the Defendant claims that he did not understand the effect of his plea agreement. The plea hearing transcript and the plea agreement itself show that a term of the plea agreement was that the Defendant would apply for enhanced probation. Early in the plea hearing, when the trial court asked if a probation hearing was to be held, the State responded that the Defendant intended to apply for enhanced probation. The trial court clarified that the State was "not promising probation, he'll just have the right to a hearing; is that correct?" The State answered affirmatively. Later in the plea hearing, the trial court told the Defendant twice that the Defendant would apply for enhanced probation but that he probably would not be a suitable candidate for alternative sentencing due to his extensive criminal record and that the trial court would "probably not hesitate . . . to send you to the penitentiary." The plea agreement itself reflects that the Defendant would apply for enhanced probation as a Range II, multiple offender. The language of the plea agreement form states explicitly that a recommended sentence and manner of service are "only a recommendation and that the Court is not bound by this recommendation in any way."

We note that the Defendant is a Range II offender, has an extensive criminal record and did not report to a probation officer for his original evaluation. His court dates had to be rescheduled for him to be evaluated for the probation he claims he thought he would receive. At his sentencing hearing, the State relied on the presentence report, which stated that the Defendant had seventeen prior felony convictions, including eight prior felony theft convictions, and twenty-two prior misdemeanor convictions. The Defendant had also been on parole in Ohio when he committed both the offenses pending in Ohio at the time of the plea and sentencing hearings and the instant Tennessee offenses. His Ohio parole was subsequently revoked, and he was to serve the balance of his prior felony sentences in confinement. The report stated that the Defendant was "an extremely high risk for probation due to his prior criminal history." In view of the Defendant's sizeable criminal record and experience with the justice systems of two states, we cannot conclude that the trial court abused its discretion in denying the Defendant's motion to withdraw his guilty pleas. The Defendant did not meet his burden.

In his second issue, the Defendant claims that he should have been able to withdraw his guilty pleas because he did not know that he could not withdraw them if the trial court found him unsuitable for probation. He claims the trial court did not tell him in open court, as required by Tennessee Rule of Criminal Procedure 11(c)(3)(B), that if the trial court rejected the plea agreement, the Defendant would not be able to withdraw the pleas.

The State replies that the Defendant waived this issue by not presenting it to the trial court in his motion to withdraw the guilty pleas. See T.R.A.P. 36(a); Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983); State v. Davis, 751 S.W.2d 167, 171 (Tenn. Crim. App. 1988). The State links this waiver to the Defendant's guilty plea withdrawal request by saying that because the trial court did not have the opportunity to evaluate the claim, there can be no abuse of discretion in

denying the Defendant's motion. Alternatively, the State argues that although the trial court did not explicitly state that the Defendant would not be able to withdraw his guilty pleas, as required by Tennessee Rule of Criminal Procedure 11(c)(3)(B), if the trial court did not order alternative sentencing, the record shows that "the defendant was effectively put on notice that if he chose to go forward with his pleas and was not granted probation, he was stuck with the result."

Although we note the Defendant was not afforded a hearing on his motion to withdraw the guilty pleas, we conclude that the Defendant has waived this second issue by failing to present it to the trial court in his motion to withdraw his pleas. See T.R.A.P. 36(a) (stating that "relief may not be granted in contravention of the province of the trier of fact"); Davis, 751 S.W.2d at 171. Besides, the very fact he did not claim in the trial court that he had the right to withdraw his pleas is telling. He is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE