# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 29, 2005

## STATE OF TENNESSEE v. TERESA C. GRAVES

### Direct Appeal from the Criminal Court for Loudon County
### No. 10100     E. Eugene Eblen, Judge

### No. E2004-02620-CCA-R3-CD - Filed October 3, 2005

The defendant, Teresa C. Graves, was convicted of theft of property over $1,000 but less than $10,000, a Class D felony, for which she was sentenced as a Range III, persistent offender, to nine years in the Department of Correction. The defendant was granted a delayed right of appeal and raises two issues: (1) whether she should be given a new trial because of ineffective assistance of counsel; and (2) whether the evidence is sufficient to support her conviction. The State also appeals and raises two issues: (1) whether the delayed appeal is time barred by the post-conviction statute of limitations; and (2) whether the trial court erred by not sentencing the defendant as a career offender. Following our review, we conclude that (1) the defendant's delayed appeal is not barred by the post-conviction statute of limitations; (2) the defendant's ineffective assistance of counsel claim is not properly before this court; (3) the evidence is sufficient to support the defendant's conviction; and (4) the defendant should have been sentenced as a career offender. Therefore, we remand to the trial court for resentencing as a career offender.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Remanded for Resentencing

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Scott McCluen, District Attorney General; and Roger Delp, Assistant District Attorney General, for the appellant/appellee, State of Tennessee.

Mary Katherine Longworth, Loudon, Tennessee, for the appellee/appellant, Teresa C. Graves.

## OPINION

## FACTS

### Procedural History

This case has a rather complicated procedural history that we will set out in detail. On April 10, 2000, the defendant was indicted by the Loudon County Grand Jury on charges of aggravated burglary and theft of property over $1,000 but less than $10,000. After a jury trial, the defendant was acquitted of aggravated burglary and convicted of theft of property over $1,000 but less than $10,000, and on June 7, 2002, was sentenced as a persistent offender to nine years in the Department of Correction. On April 15, 2003, the defendant, through trial counsel, filed a motion for a new trial. The trial court, having amended the defendant's motion to a writ of error coram nobis, denied the defendant's motion.[1] On May 18, 2003, the defendant sent a handwritten letter to the Loudon County Criminal Court Clerk[2] seeking a post-conviction suit alleging ineffective assistance of counsel and requesting appointment of counsel.[3] On September 16, 2003, the defendant, through newly appointed counsel, filed an amended petition for post-conviction relief, setting out detailed reasons why she had ineffective assistance of counsel and seeking to have her conviction and sentence set aside. In October 2004, after a post-conviction relief hearing, the trial court granted the defendant post-conviction relief by finding she was entitled to a delayed appeal and also reinstated the State's right to appeal the defendant's sentence. On November 3, 2004, the defendant filed her notice of appeal. Subsequently, on November 5, 2004, the defendant filed a motion to amend the motion for a new trial that was filed previously by trial counsel, asking the trial court for a judgment of acquittal or, alternatively, a new trial, based on ineffective assistance of counsel. The trial court, after granting the defendant permission to amend, denied the motion. The defendant filed an appeal from the order granting her post-conviction relief, which allowed a delayed appeal, arguing the evidence was insufficient to support her conviction; and from the order denying the defendant's amended motion for judgment of acquittal or, alternatively, a new trial, arguing the defendant received ineffective assistance of counsel. The State, in turn, appealed, arguing the trial court erred in sentencing the defendant as a persistent offender, rather than as a career offender.

---

[1] The record is unclear as to why the defendant's motion for a new trial was amended to a writ of error coram nobis. The writ of error coram nobis hearing transcript is not a part of the appellate record. From the order denying the writ, it appears the defendant's attorney introduced what he felt was new evidence to the trial court. The trial court, finding the defendant "failed to establish her allegations that 'Newly Discovered Evidence' required that she be granted a new trial," denied the writ. The record is also unclear about the precise date of the hearing. The trial court's order denying the writ, entered June 24, 2003, states the hearing date was April 20, 2003. In a letter to the defendant dated May 13, 2003, trial counsel told the defendant that he attended a hearing on the defendant's motion for a new trial on May 12, 2003, and the trial court denied the motion. We can only presume trial counsel, not advising the defendant that her motion for a new trial was amended to a writ of error coram nobis, was in fact referring to the writ of error coram nobis hearing. In any event, the denial of the writ of error coram nobis is not an issue in this appeal and the exact date of the hearing is of no consequence.

[2] This letter does not contain a "Filed" stamp by the court clerk's office and we are, therefore, unsure of the exact date that the request was filed.

[3] The defendant apparently sent this letter in response to trial counsel's May 13, 2003 letter to her, which advised her to notify the trial court in writing if she wished to proceed with a post-conviction relief suit.

-2-

**Jury Trial**

The victim, Marvin Weaver, testified that during July 1999, he lived in a mobile home that was "at an angle across" from the defendant's mobile home. Weaver said that while he was away for the weekend of July 16 through 19, 1999, someone broke into his mobile home by breaking out a glass louver from his back door. He said when he returned home, "[t]he cushions were out of the couch, drawers had been dumped on the floor, and [his] television and VCR were missing." The television was a 20" Mitsubishi MGA tabletop that Weaver estimated was worth "approximately $300." The VCR was a Mitsubishi "four head VCR, with the S definition feature, which at the time was one of the higher upgrades you could get. It was stereo. It had several editing features. At the time [Weaver] purchased it, it was at the top of the line that you could get, at that time." Weaver said he paid "a little bit over a thousand dollars" and estimated it was worth "[a]pproximately $700." In addition, Weaver was missing a piggy bank that contained silver coins and wheat pennies, valued at "approximately $200," a three-liter Pepsi bottle that contained pennies, valued at "approximately $25,"[4] and a Leatherman tool, valued at "probably about $35.00." Weaver contacted police and filled out a loss property form listing the estimated values and the serial number to the VCR.

On cross-examination, Weaver denied knowing Renae Newby[5] and denied that she was house-sitting for him the weekend his home was burglarized. Asked about the television, Weaver acknowledged that he paid $499 for the television, that it was a few years old, and that he estimated the value at $300 because he felt that was what he "could have sold it for at the time." Regarding the VCR, known as a "super VHS," Weaver said he bought it new but could not say when he bought it and that it had been discontinued. Weaver testified that he did not research how much it would have cost to replace the VCR. Asked about the piggy bank, Weaver said it weighed approximately twenty-five pounds and agreed that whoever stole it had to be capable of lifting and carrying twenty-five pounds.

Larry Stokely testified that during July 1999, he lived across the street from the defendant. Stokely explained that his stepson, Greg Barry, assisted him in buying a television and VCR on July 19, 1999, and that he paid $80 for both of them, "[s]ixty dollars ($60.00) in cash and $20.00 by check" made out to the defendant. He acknowledged he had no personal contact with the defendant during this transaction. The cancelled check, identified by Stokely and entered into evidence, had "TV & VCR" written in the memo block and had the defendant's signature on the back. Stokely testified that the television and VCR were confiscated in December 1999 by a police investigator who was investigating a break-in at the Stokely residence. Asked whether the television and VCR were Mitsubishi products, Stokely answered that he was "sure one of them was."

---

[4]Weaver explained that he estimated the value of the pennies in the Pepsi bottle by deciding that it would take 2,500 pennies to fill a three liter bottle.

[5]There are various spellings in the record of Ms. Newby's first name, of which we have selected one.

On cross-examination, Stokely testified that he did not give the check to the defendant but gave it to his stepson, Greg Barry. He acknowledged that the defendant did not give him the television or VCR, but that they, "[m]ysteriously enough," were left on his back porch during the night. Asked how he knew the television and VCR were for sale, Stokely said that his stepson called him from the defendant's home and told him she had them for sale for $80. Asked if he knew if the defendant ever got the $80, Stokely said he could not say "for a fact that she got the money, no."

Greg Barry testified that during July 1999, he lived with his mother and stepfather, near the defendant's mobile home. Barry said the defendant had him ask his stepfather if he would like to buy a television and VCR to "help her out to get to Georgia." In a statement to police, that was entered into evidence as an exhibit, Barry explained how the transaction took place:

> [The defendant] ask [sic] me to call my parents, she had a T.V. and VCR for sale. My dad wanted the V.C.R. to see if it worked. I took the V.C.R. from [the defendant], she was living in the trailer near the road. He saw it worked, he wrote a $20.00 check and gave me $60.00 cash and I took it to [the defendant]. The next morning, I went to get the T.V. and I got the wrong T.V. My mother asked what the T.V. was on the back porch on the freezer. I took [the defendant's] T.V. back to her.

Barry testified that the defendant first "gave me the VCR. [The defendant] handed me the VCR in my hands. I took the VCR to my dad to see if it worked. He plugged it in the wall and said he'd take it. He said it was worth what she was asking for it." After getting the VCR, Barry's stepfather wrote the $20 check and gave him the cash, which he then handed to the defendant.

Asked about the delivery of the television, Barry testified:

> I woke up about 10:00 o'clock in the morning. Everybody was up. We was getting ready to eat. Then I went down to [the defendant's], got her TV, brought it up to my house. Then [the defendant] called my father and said that we had got [sic] the wrong TV. That our TV was s[i]tting on the back porch. So we went out on the back porch, and there was an older model TV s[i]tting there.

Asked how the television got on his back porch, Barry said that the defendant's boyfriend, Chad Garrett, "was the one that brought the TV. He's the one that brought the TV to our house. And he had set it on our back porch." He further explained that Garrett must have delivered the television sometime "between 1:00 o'clock in the morning and 6:00 o'clock in the morning."

Asked who owned the television, Barry said, "It was suppose[d] to have been [the defendant's] and her boyfriend at the time. It was their TV." Barry later acknowledged that the defendant "never actually claimed ownership of" the television and that he did not "know whose TV it was. . . . [He] didn't ask no [sic] questions about the TV or nothing. [He] just -- it was suppose[d] to have been Chad or Chad's mother's TV."

-4-

Asked if he knew Renae Newby, Barry testified that she was a house sitter for the victim and that "[s]he had the front door key to his house, from what she said." Barry denied participating in the burglary of the victim's home, saying he was at home with his parents.

Investigator Freddie Gene Walker, of the Loudon County Sheriff's Department, testified that he was called to investigate the burglary of the victim's home in July 1999. He said that later while investigating a break-in at Stokely's residence, he asked Stokely if "he'd had any dealings with [the defendant], and he said he'd bought a TV and a VCR off of her. And I asked him when. And at that point I went and got the VCR, ran the serial numbers on it, and it came back as [the victim's] VCR." Investigator Walker then took custody of the television, VCR, and the cancelled check that Stokely had written to the defendant for payment. Asked whether he knew if the words "TV and VCR" were written on the check at the time it was negotiated at the bank or added after the check was returned from the bank, Walker said he did not know but testified that Stokely did not tell him he added the words after he got the check back from the bank. It was Walker's opinion that the defendant had burglarized the victim's home.

The defendant testified that she had prior convictions for armed robbery, credit card theft, and "a lot of forgeries." Asked how she got the $20 check from Stokely, the defendant explained:

> Greg [Barry] and Chad [Garrett] had come to me and told me they were going to get some money from Greg's dad. And they didn't want him to know the money was coming to Greg's, so he asked me if I would cash a check in my name for him for $20.00. And I agreed.

The defendant said she received the check from Barry and denied selling Stokely a television or VCR. She also testified that, when she cashed the $20 check, the words "TV and VCR" were not on the face of the check. She denied that Garrett was her boyfriend but acknowledged that he lived in her home. She denied asking Garrett to burglarize anyone's home.

After deliberations, the jury acquitted the defendant of the aggravated burglary charge but convicted her of theft of property over $1,000 but less than $10,000.

**Sentencing Hearing**

Prior to the sentencing hearing, the State filed a notice of intent to seek an enhanced penalty for the defendant based on her prior felony record. At the sentencing hearing, the State introduced evidence of the defendant's certified conviction for armed robbery in Georgia on May 1, 1978, for which she received a five-year sentence. The State also noted the defendant was convicted of credit card theft in Georgia on July 13, 1993, for which she received a three-year sentence.[6] Finally, the

---

[6]The State initially alleged the defendant had two counts of credit card theft but noted the defendant testified at trial to having only one count. Despite requesting a certified copy of this conviction, the State did not receive one and

(continued...)

State said the defendant had been convicted of thirty-two counts of forgery in Loudon County, Tennessee, on August 19, 1996, covering seven separate dates.[7] Stating the defendant had at least nine prior felony convictions on record, the State argued she was a career offender under Tennessee Code Annotated section 40-35-108 and asked that she be sentenced to twelve years at sixty percent.

Defense counsel, acknowledging that the defendant had at least nine prior felony convictions, argued that the persistent offender statute

> appears to give the [c]ourt some latitude in that it talks about a persistent offender being a defendant who has received a combination of five or more prior felonies. It appears that it does give the [c]ourt some latitude in making the determination, where the defendant stands before the [c]ourt convicted as a persistent offender or a career offender.

Counsel asked the trial court to use this "latitude" to find the defendant a persistent offender rather than a career offender. The trial court, apparently agreeing, stated: "[K]ind of looking behind the conviction a little bit. The [c]ourt feels that she would and should fit in the persistent offender category, and sentence her to nine years as a persistent offender, to be served."

### Post-Conviction Hearing

At the post-conviction hearing, trial counsel testified that, although the defendant asked him to appeal her case subsequent to the sentencing hearing, he never did so, nor did he file a waiver of appeal.[8] Trial counsel acknowledged that the defendant "was always very adamant that she wanted an appeal" despite the fact that the State advised him it would appeal her sentence if she did and, in fact, identified numerous letters the defendant wrote him from prison, requesting he appeal her sentence.

Although the defendant was sentenced on June 7, 2002, trial counsel did not file a motion for a new trial until April 15, 2003, saying he had problems getting the transcript of the defendant's trial and mistakenly believed he had thirty days after delivery of the transcript to file the motion for a new trial. Trial counsel identified a letter he wrote the defendant on May 13, 2003, in which he

---

[6](...continued)
we, therefore, do not have a copy in the appeal record.

[7]Despite the State's noting that the thirty-two forgery judgments were certified by the Loudon County Court Clerk for presentation to the trial court, these judgments were not entered into evidence and are not included in the appellate record.

[8]A large portion of the post-conviction hearing was dedicated to issues concerning the defendant's claim of ineffective assistance of counsel. Because we have determined, as we will explain, that this issue is not properly before this court, we forgo adding testimony concerning this issue to the opinion.

explained that the trial court denied her motion for a new trial[9] and advised her that if she wished "to proceed with a post-conviction relief suit for ineffective assistance of counsel, [she] must notify [the trial court] in writing by way of the court clerk."

The defendant testified at the post-conviction hearing that she did not understand how long she had to file her appeal. She said trial counsel never discussed with her that there was a deadline for filing. She also denied ever previously filing an appeal. She said she did not learn that trial counsel was not going to file an appeal on her behalf until she received a letter from him advising her to write the court clerk to seek post-conviction relief based on ineffective assistance of counsel.

At the conclusion of the post-conviction hearing, the trial court held that "[t]he petition is overruled as to the new trial. The [c]ourt will grant a delayed appeal. And the [c]ourt finds that [trial counsel] should have filed an appeal because of the insistence of the defendant that she wanted an appeal. And I grant her a delayed appeal." In a subsequent written order granting a delayed appeal, the trial court also reinstated the State's right to appeal the defendant's sentence.

## ANALYSIS

### I. Delayed Appeal and Statute of Limitation

First, we address whether the defendant's delayed appeal is properly before this court. The State argues that the defendant's delayed appeal is barred by the post-conviction statute of limitations. The defendant counters that the State waived this issue by failing to raise it with the trial court, application of the one-year statute of limitations to this case would violate the defendant's due process rights, and the defendant's May 2003 letter to the Loudon County Criminal Court can serve as a post-conviction relief petition.

Under the Post-Conviction Procedure Act, a person in custody must file a petition for post-conviction relief "if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-102(a) (2003). Further, "[t]ime is of the essence of the right to file a petition for post-conviction relief . . . and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise." Id. The Act requires a petitioner file "with the clerk of the court in which the conviction occurred, a written petition naming the state as the respondent." Tenn. Code Ann. § 40-30-104(a) (2003). A "petitioner shall provide all information required by this section" including "all claims known to the petitioner for granting post-conviction relief" and all "allegations of fact supporting each claim for relief." Id. at § 40-30-104(b), (d), (e). If a trial court, after conducting a post-conviction hearing,

---

[9]Trial counsel apparently did not inform the defendant that her motion for a new trial had been amended to a writ of error coram nobis.

finds that the petitioner was denied the right to an appeal from the original conviction in violation of the Constitution of the United States or the Constitution of Tennessee and that there is an adequate record of the original trial proceeding available for such review, the judge can . . . grant a delayed appeal.

Tenn. Code Ann. § 40-30-113(a)(1) (2003).  As such, "the statute of limitations for post-conviction relief applies to delayed appeals as well, because the petitioner must comply with the post-conviction procedure act to obtain a delayed appeal."  State v. Handley, 889 S.W.2d 223, 224 (Tenn.  Crim. App. 1994).

The defendant's judgment, which was not appealed, became final on July 7, 2002.  On May 18, 2003, the defendant wrote the Loudon County Criminal Court Clerk the following letter:

Dear [Court Clerk],

I am writing this letter to notify [the trial court], by way of you (court clerk) that I would like to proceed my case with a post-conviction relief suit for ineffective assistance of counsel.

I would also at this time like to request appointment of counsel to help me with the post conviction relief.

Please notify me as soon as possible to let me know that my letter was received and if the judge will honor my request.

Respectfully
[The defendant]

Although written within one year of her judgment, the State, for the first time on appeal, argues that the defendant's May 2003 letter to the trial court clerk cannot be converted to a petition for post-conviction relief because it fails to meet the requirements of Tennessee Code Annotated section 40-30-104.  The State argues, instead, that the defendant's amended petition for post-conviction relief filed September 16, 2003, is her only post-conviction relief petition and, having been filed more than a year after her judgment became final, is accordingly time-barred by the post-conviction statute of limitations.

This court has held that "[a] party may not raise an issue for the first time in the appellate court."  State v. Turner, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995) (citing Lawrence v. Stanford, 655 S.W.2d 927, 929-30 (Tenn. 1983); State v. Davis, 751 S.W.2d 167, 171 (Tenn. Crim. App. 1988 )).  An appellate court should "not permit a party to take advantage of its adversary when it is too late to remedy the basis of the objection."  State v. Adkisson, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994).  The trial court here apparently treated the defendant's May 2003 letter as a valid post-conviction relief petition.  Regardless of whether the May 2003 letter constituted a valid post-

conviction relief petition, the State waived this issue for appeal when it failed to timely bring this issue before the trial court. In addition, we also conclude that the trial court appropriately granted the defendant a delayed appeal in this case. Despite numerous requests by the defendant, trial counsel failed to file an appeal. His actions unconstitutionally denied the defendant her right to appeal her original conviction and, accordingly, we find her delayed appeal is properly before this court.

## II. Ineffective Assistance of Counsel

In addition to her delayed appeal, the defendant argues the trial court erred in denying her amended motion for judgment of acquittal, or alternatively, a new trial based on ineffective assistance of counsel. The State argues this claim is not properly before this court because the defendant was granted a delayed appeal and the trial court lost jurisdiction to hear the motion once the defendant filed her notice of appeal. Tennessee Supreme Court Rule 28, § 9(D)(1)(b)(i) provides that when a trial court enters an order granting a delayed appeal, the court shall "stay[] the post-conviction proceedings pending the final disposition of the delayed appeal." Accordingly, this claim is without merit.

In this case, the defendant filed a post-conviction relief petition based on ineffective assistance of counsel. After the post-conviction hearing, the trial court denied the defendant's request for a new trial based on ineffective assistance of counsel but granted the defendant a delayed appeal. Once the trial court granted this delayed appeal, the collateral attack on the defendant's conviction based on ineffective assistance of counsel was appropriately denied. Gibson, 7 S.W.3d at 49 ("A petition for post-conviction relief, complaining of the original conviction and sentence, may not be maintained while a direct appeal of the same conviction and sentence is being prosecuted.").

In addition, the defendant filed her notice of appeal on November 3, 2004, and her amended motion for judgment of acquittal or, alternatively, a new trial on November 5, 2004. Upon the filing of the notice of appeal, the trial court no longer had jurisdiction in this matter. State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) ("The jurisdiction of the Court of Criminal Appeals attaches upon the filing of the notice of appeal and, therefore, the trial court loses jurisdiction.") (citing State v. Peak, 823 S.W.2d 228, 229 (Tenn. Crim. App. 1991)). Morever, the trial judge's consideration of the defendant's amended motion that was filed after the trial court lost jurisdiction will not validate the motion. State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) ("The trial judge's erroneous consideration of ruling on a motion for new trial not timely filed, as in this case, does not validate the motion.") (citing State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989)).

The defendant argues that she should have been allowed to file her amended motion for a new trial because "the trial court did not grant thirty days for the filing of a Motion for New Trial as it should have and the state filed its notice of appeal first," thereby depriving her of her due process rights by preventing her from filing this motion. The defendant is misreading Tennessee Code Annotated section 40-30-113(a) (2003), which states:

(a) When the trial judge conducting a hearing pursuant to this part finds that the petitioner was denied the right to an appeal from the original conviction in violation of the Constitution of the United States or the Constitution of Tennessee and that there is an adequate record of the original trial proceeding available for such review, the judge can:

(1) If a transcript was filed, grant a delayed appeal;

(2) If, in the original proceedings, a motion for a new trial was filed and overruled but no transcript was filed, authorize the filing of the transcript in the convicting court;  or

(3) If no motion for a new trial was filed in the original proceeding, authorize such motion to be made before the original trial court within thirty (30) days.  Such motion shall be disposed of by the original trial court as if the motion had been filed under authority of Rule 59 of the Rules of Civil Procedure.

The statute clearly does not allow both a delayed appeal and a motion for a new trial.  Here, the trial court granted a delay appeal.  As such, the defendant was not also entitled to thirty days in which to file a motion for a new trial; and the trial court did not err in not granting such.  The State, having been granted leave to appeal the defendant's sentence, was free to file its notice of appeal when it did.  Consequently, only the claims related to the defendant's delayed appeal are properly before this court.

### III.  Sufficiency of Evidence

In her delayed appeal, the defendant contends that the evidence was insufficient to support the jury's verdict.  The defendant argues that "[t]he evidence as to the value of the property allegedly taken is speculative at best" and that there was no evidence establishing that she exercised control over any of the other stolen property aside from the television and VCR.  The State argues that the evidence was sufficient to support the jury's verdict.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge,

accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). In other words, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that might be drawn from the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In Tennessee, a person commits the crime of theft of property when that person "knowingly obtains or exercises control over the property" of another without the owner's effective consent and with the intent to deprive the owner of the property. See Tenn. Code Ann. § 39-14-103 (2003). If the property has a value of $1,000 or more, but less than $10,000, the theft is a Class D felony. See Tenn. Code Ann. § 39-14-105(3) (2003). The defendant argues that the evidence regarding the value of the property was "speculative at best." "Value" is defined as "[t]he fair market value of the property . . . at the time and place of the offense" but "[i]f the fair market value of the popery cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." See Tenn. Code Ann. § 39-11-106(a)(36)(A)(i), (ii) (2003). It is up to the jury to determine the fair market value of the items stolen. State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981) ("In determining the value of stolen property in larceny cases, the trier of fact is to determine the fair cash market value of the stolen property at the time and place of the theft; neither the original value nor the replacement value of the stolen goods are recognized for this purpose.").

The defendant argues the evidence was not sufficient for a rational jury to determine the value of the items stolen was actually $1,000. We disagree. Under the Tennessee Rules of Evidence, a "witness may testify to the value of the witness's own property or services." Tenn. R. Evid. 701(b). The victim, in detail, described his stolen television as a 20" Mitsubishi tabletop that he bought new for $499 and which he valued at $300 at the time of the theft. Also in detail, the victim described his stolen "super VHS" VCR that he purchased for $1,000 and valued at $700 at the time of the theft. He acknowledged that he was not aware of anyone who would have bought the VCR for $700 but pointed out that he was not trying to sell it. The $700 was what he would have asked for from a willing buyer to buy it if he had decided to sell it. The defendant was free to put

on evidence to contradict these values but did not do so. Under these circumstances, a jury reasonably could have found the combined value of the television and VCR to be $1,000.

The defendant cites State v. Robert Nix, No. 136, 1991 WL 170688 (Tenn. Crim. App. Sept. 6, 1991), perm. to appeal denied (Tenn. Dec. 30, 1991), to argue that the victim's opinion testimony regarding the value of his property is "essentially conjecture or guess-work" and "is insufficient." We find Nix readily distinguishable from the present appeal. In Nix, the victim of a larceny initially guessed at the face value of some coins that were stolen and later admitted to not knowing the value of the coins at all. Id. at *2. This court, finding the evidence insufficient to determine the value of the coins, explained "[t]he evidence upon which this [c]ourt must rely and the inferences therefrom to which the state is entitled must be based upon proper foundation and not upon guess work." Id. Here, there was no guess work concerning the value of the television and VCR. The victim stated what he would sell the television and VCR for in the event of a sale. He never testified that he did not know what the value of the items was. He also described the items with sufficient detail to allow the jury to decide if the estimated values were appropriate. We conclude that this evidence was sufficient for a rational jury to find the television and VCR were worth $1,000.

The defendant also argues there was no evidence showing that she had control over any of the other items that were stolen from the victim: the piggy bank, the Pepsi-bottle full of pennies, and the Leatherman tool. Even accepting, *arguendo*, that this is true, it does not affect the outcome of this case. We have already determined that the evidence was sufficient to support the determination that the television and VCR were worth $1,000.

## IV. Sentencing

As a condition of the defendant's delayed appeal, the State was given permission by the trial court to appeal the defendant's sentence. The State contends that the defendant should have been sentenced as a career, rather than a persistent, offender because of her prior felony record. The defendant argues that the record on appeal is insufficient to review the sentencing determination.

When the State challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-402(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-402, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. If the appellate court determines the sentence is erroneous, it "may affirm, vacate, set aside, increase or reduce the sentence imposed or remand the case or direct the entry of an appropriate order." Tenn. Code Ann. § 40-35-402(c) (2003).

A career offender is a defendant who has at least six prior felony convictions of any classification (Classes A, B, C, D, or E) if the defendant's current conviction offense is a Class D or E felony. Tenn. Code Ann. § 40-35-108(a)(3) (2003). As previously discussed, theft of property having a value of $1,000 or more but less than $10,000 is a Class D felony. In determining the number of prior convictions for the purpose of offender status, "[c]onvictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions." Tenn. Code Ann. § 40-35-108(b)(4) (2003). This is often referred to as the "twenty-four-hour merger rule." A defendant's "prior convictions" will include "convictions under the laws of any other state, government, or country which, if committed in this state, would have constituted an offense cognizable by the laws of this state." Tenn. Code Ann. § 40-35-108(b)(5) (2003). If the trial court finds a defendant is a career offender beyond a reasonable doubt, the defendant "shall receive the maximum sentence within the applicable Range III." Tenn. Code Ann. § 40-35-108(c) (2003). When a defendant has the requisite number of prior felonies, "a trial court has no discretion with respect to the length of the sentence and must impose the maximum sentence pursuant to Tenn. Code Ann. § 40-35-108." State v. Rita Davis, No. M2000-03227-CCA-R3-CD, 2001 WL 1398138, at *3 (Tenn. Crim. App. Nov. 9, 2001), perm. to appeal denied (Tenn. May 6, 2002). Either party may appeal the finding that the defendant is or is not a career offender. Tenn. Code Ann. § 40-35-108(d) (2003).

The sole question on appeal concerning the defendant's sentencing is whether she was correctly determined to be a persistent, rather than a career, offender. After a review of her prior felony record, we conclude that the defendant should have been sentenced as a career offender because she has more than six prior felonies. Her presentence report shows that she has two prior felony convictions from Georgia: (1) a 1978 armed robbery from DeKalb County for which she received a five-year sentence; and (2) a 1983 credit card theft from DeKalb County for which she received a three-year sentence. The presentence report also shows the defendant pled guilty in 1996 to thirty-two counts of forgery in Loudon County, Tennessee, receiving a total four-year sentence.

-13-

According to the presentence report, these thirty-two counts stretched out over eight separate[10] days in October 1994: (1) one count of forgery on October 19; (2) five counts of forgery on October 20; (3) seven counts of forgery on October 21; (4) six counts of forgery on October 22; (5) one count of forgery on October 23; (6) five counts of forgery on October 24; (7) five counts of forgery on October 25; (8) two counts of forgery on October 26. Under Tennessee Code Annotated section 40-35-108, the defendant meets the criteria for being a career offender and, as such, the trial court erred in sentencing her as a persistent offender.

The defendant correctly points out that the record on appeal does not contain certified copies of judgments for all of these convictions. The record on appeal contains a certified copy of only the Georgia armed robbery judgment from 1978, the document being introduced into evidence at the sentencing hearing. The defendant also correctly notes that "[i]t is the duty of the appealing party to prepare a fair, accurate and complete record on appeal to enable meaningful appellate review." State v. Walker, 29 S.W.3d 885, 895 (Tenn. Crim. App. 1999) (citing Tenn. R. App. P. 24(b)). The defendant argues that we cannot use the presentence report as part of our *de novo* review because, although it is part of the technical record, it was never offered into evidence at the sentencing hearing, used by the trial court in reaching its sentencing decision, and contains "triple hearsay."

Addressing the defendant's arguments concerning the presentence report, we first find she has waived her argument that the presentence report cannot be considered on appellate review because it contains "triple hearsay." The time to make this argument was at the trial court level and is not appropriate to bring up for the first time on appeal. In addition, though the record is not entirely clear, it would appear that the trial court did have a copy of the presentence report during the sentencing hearing, as the State made reference during the hearing to the report. Finally, even if we did not consider the presentence report to make the determination that the defendant had at least six prior felonies, the convictions that were discussed at the sentencing hearing are sufficient to find the defendant had more than six prior felony convictions. At the sentencing hearing, the State laid out in detail the defendant's prior convictions, and these were not objected to by the defendant. In fact, her attorney and the State both agreed that she had two prior felony convictions in Georgia and that the thirty-two forgery convictions happened over a seven-day period. Defense counsel agreed that, even without counting the Georgia convictions, the defendant had more than six prior felonies when just considering the thirty-two counts of forgery from Loudon County. As such, we find the record is sufficient to support the finding that the defendant has more than six prior felonies and, pursuant to Tennessee Code Annotated section 40-35-402(c), remand to the trial court for correct sentencing as a career offender.

---

[10]During the sentencing hearing, both the State and defense counsel stated these forgeries took place over a seven-day period. Because we do not have the certified copies of the judgments, we cannot explain the discrepancy.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the defendant's conviction and remand for resentencing as a career offender.

_____

ALAN E. GLENN, JUDGE